RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0406p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

NORTHEAST OHIO COALITION FOR THE HOMELESS
and SERVICE EMPLOYEES INTERNATIONAL UNION,
LOCAL 1199,

                    *Plaintiffs-Appellees,*

       *v.*

J. KENNETH BLACKWELL,

               *Defendant-Appellant (06-4412),*

STATE OF OHIO,

               *Intervenor-Appellant (06-4421).*

Nos. 06-4412/4421

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 06-00896—Algenon L. Marbley, District Judge.

Decided and Filed: October 31, 2006

Before: GIBBONS and McKEAGUE, Circuit Judges; TARNOW, District Judge.[*]

GIBBONS, J., delivered the opinion of the court. McKEAGUE, J. (p. 11), delivered a separate concurring opinion. TARNOW, D. J. (p. 12), delivered a separate opinion concurring in part and dissenting in part.

---

## OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant J. Kenneth Blackwell, in his official capacity as the Secretary of State of the State of Ohio (the "Secretary"), moves this court to stay or vacate a temporary restraining order ("TRO") and associated orders to the Secretary and County Boards of Elections that restrain enforcement of certain absentee voter identification provisions under Ohio Rev. Code Ann. §§ 3509.03(E)(1)-(3), 3509.04, 3509.05(A). The orders were entered by the district court on October 26, 2006. Plaintiffs-appellees Northeast Ohio Coalition for the Homeless and Service Employees International Union, Local 1199 (the "Organizations") move to dismiss this appeal for lack of subject matter jurisdiction. The State of Ohio moves to intervene to represent the interests of the people of Ohio and the General Assembly in defending the constitutionality of the statute. For the following reasons, we deny the motion to dismiss for lack

---

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

of jurisdiction, grant the motion to intervene, and grant in part the motion to stay or vacate the district court's orders.

I.

On January 31, 2006, the Ohio General Assembly passed House Bill 3, Ohio's comprehensive election reform bill ("Voter ID law"), and the Governor signed the bill the same day. The bill amended the Ohio Election Code to require that voters provide any of several specific types of identification in order to cast a regular ballot in state and federal elections held in Ohio. Some Voter ID law provisions went into effect on May 2, 2006, and the remaining provisions went into effect on June 1, 2006. Portions of the challenged statutes relating to applications for absentee ballots were enacted as part of HB 234, which was effective on January 27, 2005.

The provisions of the Voter ID law that require voters to provide any of several specific types of identification when casting their ballots are mandatory for all persons who cast their votes by regular ballot on election day. Ohio Rev. Code Ann. § 3505.18(A)(1). These new voter-identification laws are not mandatory for voters who cast their votes by absentee ballot, whether by mail or in-person at their Boards of Elections, before or on election day. Ohio Rev. Code Ann. §§ 3509.03, 3509.04, 3509.05. However, like the sections governing election-day voting, the Voter ID law also includes other provisions relating to absentee voter identification requirements, and it is these provisions to which the TRO relates.

Three sections of the Voter ID law relate to absentee ballots. Section 3509.03(E) requires that an application for an absentee ballot contain:

> (E) One of the following:
>
> (1) The elector's driver's license number;
> (2) The last four digits of the elector's social security number;
> (3) A copy of the elector's current and valid photo identification, a copy of a military identification that shows the elector's name and current address, or a copy of a current utility bill, bank statement, government check, paycheck, or other government document, other than a notice of an election mailed by a board of elections under section 3501.19 of the Revised Code or a notice of voter registration mailed by a board of elections under section 3503.19 of the Revised Code, that shows the name and address of the elector.

Ohio Rev. Code Ann. § 3509.03(E). Section 3509.04(B) requires that with each absentee ballot the Board of Elections include an identification envelope requiring a voter to provide one of the following:

> My driver's license number is . . . (Driver's license number)
>
> The last four digits of my Social Security Number are . . . (Last four digits of Social Security Number)
>
> . . . . In lieu of providing a driver's license number or the last four digits of my Social Security Number, I am enclosing a copy of one of the following in the return envelope in which this identification envelope will be mailed: a current and valid photo identification, a military identification that shows my name and current address, or a current utility bill, bank statement, government check, paycheck, or other government document, other than a notice of an election mailed by a board of

elections under section 3501.19 of the Revised Code or a notice of voter registration mailed by a board of elections, that shows my name and address.

Ohio Rev. Code Ann. § 3509.04(B).  Section 3509.05(A) provides that when returning the absentee ballot:

> If the elector does not provide the elector's driver's license number or the last four digits of the elector's social security number on the statement of voter on the identification envelope, the elector also shall include in the return envelope with the identification envelope a copy of the elector's current valid photo identification, a copy of a military identification that shows the elector's name and current address, or a copy of a current utility bill, bank statement, government check, paycheck, or other government documents, other than a notice of an election mailed by a board of elections under section 3501.19 of the Revised Code or a notice of voter registration mailed by board of elections under section 3503.19 of the Revised Code, that shows the name and address of the elector.

Ohio Rev. Code Ann. § 3509.05(A).  Absentee voting pursuant to these laws for the November 2006 election began in early October 2006.

On October 26, 2006, the Secretary issued Directive 2006-78 in an effort to "ensure that the November 7 elections are conducted uniformly throughout the State."  In the Directive the Secretary defines the term "current" as used in the Voter ID law as "dated not more than six months from the date that it is presented to the election official."  The Directive defines "government document" to include "any local, state or federal government document that shows the voter's name and current address."  Finally, the Directive includes a section intended to clarify what was meant by "driver's license number."  This section acknowledges that a driver's license has two numbers in close proximity to one another, but noted that "[u]pon receipt of an absentee ballot, which purports to contain the driver's license number but contains the number above the photograph or some other number which is not the driver license [sic] number, acceptable proof of identity has not been provided."

II.

On October 24, 2006, the Organizations filed suit in the district court claiming in relevant part that: (1) the voter identification laws for absentee ballots are confusing, vague, impossible to apply, and in fact are being applied differently by Ohio's Boards of Elections, causing the November 2006 election to be conducted in a manner that is fundamentally unfair in violation of the Due Process Clause of the Fourteenth Amendment (Count One); (2) the voter identification laws for absentee ballots cannot and will not be applied uniformly by Boards of Elections, violating the Equal Protection Clause of the Fourteenth Amendment (Count Two); and (3) the requirement of proof of current address for submission of absentee ballots, when other voters are not required to provide a current address, violates the Fourteenth Amendment and 42 U.S.C. § 1971(a)(2)(A)-(B) (Counts Eight, Nine, and Ten).[1]  Counts Three through Seven and Eleven through Thirteen assert claims not relevant to the TRO request.

After a hearing on October 26, 2006, the district court issued a TRO restraining the enforcement of the absentee voting identification requirements in Ohio Rev. Code Ann.

---

[1]At the hearing on the TRO, counsel for the Organizations characterized the challenge to the absentee ballot provisions as "mostly an as applied challenge."  He also stated that "the main thrust of our lawsuit, the reason we brought it, is because of those as applied problems."

§§ 3509.03(E)(1)-(3), 3509.04, 3905.05(A) (quoted above). Specifically, the district court concluded the phrases "current," "other government document," "military identification," and "driver's license number" were unconstitutionally vague and were being unequally applied by the Boards of Elections. Although the effect of the clarifying Directive issued by the Secretary was discussed at the hearing, it is not addressed in the TRO. In addition to enjoining enforcement of these provisions, the district court ordered the Secretary to issue a directive to the Boards of Elections requiring that they not enforce the enjoined provisions, preserve all absentee ballots in their present form, and inform absentee voters that compliance with the enjoined provisions was not required. By its terms, the TRO remains in effect until the district court disposes of the Organizations' motion for a preliminary injunction, for which an evidentiary hearing is scheduled on November 1, 2006.

As the Secretary did not wish to file an appeal of the TRO, the Attorney General of Ohio on behalf of the State of Ohio (the "State") filed a motion to intervene in the case. The district court held a hearing on October 27, 2006, and denied the motion to intervene as of right, concluding that although the State had the requisite interest in the outcome of the case, that interest was adequately represented by the Secretary, who was also represented in the case by the Attorney General's office. The district court also denied permissive intervention, concluding that because the State's interests were adequately represented by the Secretary, intervention would present redundant arguments and waste the time of the district court and the Attorney General's office.

The Attorney General's office, on behalf of the Secretary, filed a timely appeal of the TRO, which was docketed as No. 06-4412, moving to stay or vacate the district court's orders. The Organizations filed a motion to dismiss that appeal for lack of subject matter jurisdiction. The State moved to intervene in the appeal of the TRO. The State filed a separate appeal of the denial of its motion to intervene as of right in the district court case, which was docketed as No. 06-4421. When parties have filed separate timely notices of appeal, the appeals may be joined or consolidated by this court. Fed. R. of App. P. 3(b) (providing that the court may consolidate appeals on its own motion); *see also In re Cannonsberg Envtl. Associates, Ltd.*, 72 F.3d 1260, 1269 (6th Cir. 1996). Because both cases present common questions of law and fact, we consolidate the two cases. The analysis that follows in part IV, pertaining to the matter of the State's intervention, thus applies to both cases.

III.

The Organizations move to dismiss appeal No. 06-4412 for lack of subject matter jurisdiction, arguing that 28 U.S.C. § 1292(a)(1) does not allow for an interlocutory appeal of the district court's TRO. This court has jurisdiction of appeals from "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292(a)(1). In contrast, this court generally lacks jurisdiction to hear an appeal of the district court's decision to grant or deny a TRO. *See Office of Pers. Mgmt. v. Am. Fed'n of Gov't Employees, AFL-CIO*, 473 U.S. 1301, 1303-04 (1985); *Leslie v. Penn Cent. R.R. Co.*, 410 F.2d 750, 752 (6th Cir. 1969). The rationale for this rule is that TROs are of short duration and usually terminate with a prompt ruling on a preliminary injunction, from which the losing party has an immediate right of appeal. *See Vuitton v. White*, 945 F.2d 569, 573 (3d Cir. 1991). Therefore, an appeal of the TRO is not necessary to protect the rights of the parties, *see id.*, and practical reasons favor waiting for an appeal of the preliminary injunction, *see Dilworth v. Riner*, 343 F.2d 226, 229 (5th Cir. 1965) (noting that an appeal is normally not feasible within the short time available and that orderly procedure requires the trial judge pass on the question presented with full development of the facts and the law); *Connell v. Dulien Steel Prods., Inc.*, 240 F.2d 414, 418 (5th Cir. 1957).

However, the label attached to an order by the trial court is not decisive, and the court looks to the nature of the order and the substance of the proceeding below to determine whether the rationale for denying appeal applies. *See In re Carroll*, 903 F.2d 1266, 1269 (9th Cir. 1990); *Adams v. Vance*, 570 F.2d 950, 953 (D.C. Cir. 1978); *Morning Tel. v. Powers*, 450 F.2d 97, 99 (2d Cir. 1971); *Dilworth*, 343 F.2d at 229; *Connell*, 240 F.2d 418. An order may be appealed under section 1292(a)(1) if it has the practical effect of an injunction and "further[s] the statutory purpose of 'permit[ting] litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence.'" *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (quoting *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181 (1955)); *see Sims Varner & Assocs. v. Blanchard*, 794 F.2d 1123, 1126-27 (6th Cir. 1986). Accordingly, courts have allowed interlocutory appeal of TROs which threatened to inflict irretrievable harms before the TRO expired. *See Ross v. Rell*, 398 F.3d 203 (2d Cir. 2005); *Berrigan v. Sigler*, 475 F.2d 918 (D.C. Cir. 1973); *United States v. Wood*, 295 F.2d 772 (5th Cir. 1961). Furthermore, courts have allowed interlocutory appeal of TROs that do not preserve the status quo but rather act as a mandatory injunction requiring affirmative action. *See Adams*, 570 F.2d at 953; *Belknap v. Leary*, 427 F.2d 496, 498 (2d Cir. 1970). When a TRO does not "merely preserve the status quo pending further proceedings," but rather "directs action so potent with consequences so irretrievable, we provide an immediate appeal to protect the rights of the parties." *Adams*, 570 F.2d at 953; *see Am. Fed'n of Gov't Employees*, 473 U.S. at 1304-05 (citing *Adams* with approval, noting that "[o]nly if the District Court *granted* the temporary restraining order would it have disturbed the status quo" by preventing the implementation of new regulations, and implying that appellate jurisdiction would be available); *cf. Summit County Democratic Cent. and Executive Comm. v. Blackwell*, 388 F.3d 547 (6th Cir. 2004) (issuing a stay of a TRO affecting election day requirements without analysis of jurisdiction).

The TRO at issue in this case both threatens to inflict irretrievable harm before it expires and acts as a mandatory injunction that does not preserve the status quo. The TRO requires the Secretary to direct County Boards of Elections not to enforce the disputed voter identification requirements and, in fact, to instruct voters affirmatively that they need not comply with the identification requirements. Any absentee ballot cast during the operation of the TRO must necessarily be considered valid, regardless of whether the voter has complied with the identification requirements. As it will be difficult, if not impossible, to equitably enforce the voter identification requirements retroactively for these ballots, the TRO permanently exempts these ballots from the disputed law, regardless of the ultimate resolution of this case, inflicting an irretrievable harm on the State of Ohio. Thus the TRO goes far beyond preserving the status quo, which could be achieved by restraining the State from discarding any ballots that it found to be in violation of the identification requirements. The nature and effect of this TRO necessitate an immediate interlocutory appeal, and the court has subject matter jurisdiction over it. The motion to dismiss is denied.

IV.

The Attorney General of Ohio seeks to intervene on behalf of the State pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 24(a) and (b) "in order to defend the constitutionality of [Ohio] R.C. 3501.01, *et seq.*, Ohio's Voter Identification Statutes [Voter ID law]." State of Ohio's Mot. to Intervene at 1. The State both moves to intervene in the appeal of the TRO before this court (No. 06-4412) and appeals the district court's denial of its motion to intervene as of right in the district court case (No. 06-4421). According to the State, the "Secretary's stated desire not to appeal has led to this motion to intervene on behalf of the State of Ohio and the General Assembly, who wish to participate in arguing the constitutionality of the statutes at issue." *Id.* This court may grant the motion to intervene pursuant to F.R.C.P. 24 either as a matter of right under 24(a) or, alternatively, permit the absentee State to intervene under 24(b). These same provisions govern the State's intervention in the district court as well.

Upon timely application, F.R.C.P. 24(a) permits anyone to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating the action and is so situated that the disposition of the action may impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties. F.R.C.P. 24(a).

The State first argues that it has a statutory right to intervene pursuant to 28 U.S.C. § 2403(b), which provides "[i]n any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof *is not a party*, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality." 28 U.S.C. § 2403(b) (emphasis added). However, as noted by the State itself, "this is not a case in which the duty to certify arises or [28 U.S.C. § 2403(b)] strictly applies." State of Ohio's Mot. to Intervene at 1. The Secretary, an officer of the State, is already a party in this case and thus the provision is inapposite. Any argument that the Secretary's intention not to appeal the matter results in the Secretary not being a party to the matter for purposes of section 2403(b) is contrary to the plain language of the statute.

The State does, however, satisfy the requirements of F.R.C.P. 24(a)(2), and thus has a right to intervene. Under this court's interpretation of Rule 24(a)(2), a third party may qualify for intervention of right in the absence of a statute if the third party can satisfy four elements: (1) timeliness of application; (2) a substantial legal interest in the case; (3) impairment of the applicant's ability to protect that interest in the absence of intervention; and (4) inadequate representation of that interest by parties already before the court. *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).[2]

The first two factors are easily met. The State of Ohio filed this motion within hours of the appeal by the defendant, and the application is therefore timely. Under this circuit's "rather expansive notion of interest," the State also has a manifest legal interest in defending the constitutionality of Ohio's laws. *Id.*; *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) ("[T]his court has acknowledged that 'interest' is to be construed liberally.").

The State's right to intervene then turns on the final two factors. The Supreme Court has emphasized that the requirement of impairment of a legally protected interest is a minimal one: the requirement is met if the applicant shows "that representation of his interest 'may be' inadequate.'" *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted); *see also Mich. State AFL-CIO*, 103 F.3d at 1247 ("a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." (citation omitted)). Here, an adverse ruling could hinder the State's ability to litigate the validity of the Ohio law. *See Linton v. Comm'r of Health & Env't*, 973 F.2d 1311, 1319 (6th Cir. 1992) (acknowledging that potential *stare decisis* effects can be a sufficient basis for finding an impairment of interest). Further, this court has recognized that the time-sensitive nature of a case may be a factor in our intervention analysis. *See Ams. United for Separation of Church and State v. City of Grand Rapids*, 922 F.2d 303 (6th Cir. 1990) (finding that the extra time involved in initiating a separate lawsuit to allow a would-be intervenor to display a menorah on public property

---

[2] In considering an appeal from a district court's denial of intervention (case No. 06-4421), this court reviews a district court's determination as to the timeliness element for an abuse of discretion, and the remaining three elements are examined *de novo*. *Cuyahoga Valley Ry. Co. v. Tracy*, 6 F.3d 389, 395 (6th Cir. 1993). Here the district court made no ruling as to timeliness. As to the motion to intervene in appeal No. 06-4412, we apply the rule ourselves in the first instance. Therefore, the analysis in both cases is the same.

likely would have pushed the resolution beyond the coming Chanukah season). The same timeliness concern exists here, as absentee voting is ongoing and the election is imminent. Accordingly, the State of Ohio has demonstrated impairment of its interest.

The State's burden with respect to establishing that its interest is not adequately protected by the existing party to the action is a minimal one; it is sufficient to prove that representation *may* be inadequate. *Linton*, 973 F.2d at 1319. A would-be intervenor is not required to show that the current representation will in fact be inadequate. *Mich. State AFL-CIO*, 103 F.3d at 1247 (finding that "it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments."). In this case, the Secretary's primary interest is in ensuring the smooth administration of the election, while the State and General Assembly have an independent interest in defending the validity of Ohio laws and ensuring that those laws are enforced. Further, the Secretary's stated desire not to appeal the district court's grant of a TRO illustrates how the interests of the Secretary and the State of Ohio potentially diverge. *See Mich. State AFL-CIO*, 103 F.3d at 1248.

Accordingly, the Organizations' insistence that a would-be intervenor "must overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit" is misplaced. Opp'n of Pls.-Appellees to Emergency Mots. for Reversal of Denial of Mot. to Intervene at 15 (citation omitted). As discussed above, the State and the Secretary do not have "the same ultimate objective." The Organizations' emphasis on which lawyers from the Attorney General's office attended the TRO hearing and the Secretary's intention to litigate the preliminary injunction is irrelevant. The difference of opinion regarding whether to appeal the TRO is merely illustrative of the underlying divergent interests of the Secretary and the State.

Under the circumstances of this case, then, we conclude that the State of Ohio has satisfied the four elements found in Federal Rule of Civil Procedure 24(a) and is entitled to intervention as of right, both in appeal No. 06-4412 and in the ongoing district court proceedings. Accordingly, we need not address the State's alternative argument for permissive intervention under Rule 24(b).

The Organizations also argue that the Attorney General has no authority to appeal the TRO in the Secretary of State's name. Opp'n of Pls.-Appellees to Emergency Mot. to Stay or Vacate District Ct.'s Order at 11-12 (citing "insufficient time or space to brief this question"). The State of Ohio responded by noting that "Ohio's Constitution does vest the Attorney General with independent authority to determine litigation, as that result inheres in the very structural decision to have an independently-elected Attorney General." State's Resp. to Pls.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction at 6.

Under Ohio Rev. Code Ann. § 109.02, the Attorney General is "the chief law officer for the state and all its departments" and shall appear for the State in any tribunal in a case in which the state is a party when required by the governor or the general assembly. The Attorney General, then, is both the State's chief legal officer and a representative of the people and the public interest, but also a representative of an individual officer-client. *See* Justin G. Davids, *State Attorneys General and the Client-Attorney Relationship: Establishing the Power to Sue State Officers*, 38 COLUM. J.L. & SOC. PROBS. 365, 372-76 (2005).

The exact extent of the Attorney General's litigation authority, however, is not clearly defined under Ohio law. The Ohio Supreme Court has not directly addressed the Attorney General's authority to litigate on behalf of a state officer when that officer no longer wishes to pursue the appeal. Other states' conclusions regarding the extent of the attorney general's litigation authority vary widely, and there is no clear consensus. *Compare Commonwealth ex rel. Hancock v. Paxton*, 516 S.W.2d 865, 867 (Ky. 1974) (concluding that "in case of a conflict of duties the Attorney

General's primary obligation is to the Commonwealth, the body politic, rather than to its officers, departments, commissions, or agencies.") *and Sanderson v. Blue Cross & Blue Shield of Ala.*, 570 So.2d 675, 684 (Ala. 1990) (holding that the attorney general had the authority to dismiss legal proceedings over the objection of an executive agency: "As the state's chief legal officer, the attorney-general has power, both under common law and by statute, to make any disposition of the state's litigation that he deems for its best interest.") *with Santa Rita Mining Co. v. Dep't of Prop. Valuation*, 530 P.2d 360 (Ariz. 1975) (holding that the attorney general lacked the authority to maintain an appeal without the approval of his agency client).

Accordingly, the State's motion to intervene in appeal No. 06-4412 is granted, and the State's appeal of the district court's denial of intervention in case No. 06-4421 is granted. In light of our holding that the State of Ohio is entitled to intervention of right under F.R.C.P. 24(a), and wary of determining an issue of Ohio constitutional and common law where unnecessary, we decline to wade into the debate regarding the parameters of the Attorney General's litigation authority.

V.

The district court's decision to grant a temporary restraining order, when appealable, is reviewed by this court for abuse of discretion. *Beacon J. Publ'g Co., Inc. v. Blackwell*, 389 F.3d 683, 684 (6th Cir. 2004). To determine whether a TRO should be stayed, the court considers the same factors considered in determining whether to issue a TRO or preliminary injunction. *See Summit County*, 388 F.3d at 550. Those factors are (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay. *Id.*; *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay. *See id.*

In evaluating plaintiffs' likelihood of success on the merits, we examine first the issue of standing. The district court correctly noted that "an association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Sevs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). In analyzing standing, the district court focused primarily on the concept that an association may have standing to sue on behalf of its members. We see the more pertinent inquiry here as whether the underlying requirements for associational standing have been met, that is, whether plaintiffs' members would have standing to sue in their own right and whether the interests at stake are germane to the organization's purpose.

For an association's members to "otherwise have standing to sue in their own right," they must have (1) "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "the injury has to be fairly traceable to the challenged action of the defendant"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations and citations omitted). The record

on the standing issue consists only of the unverified complaint.[3] In the complaint plaintiff Northeast Ohio Coalition for the Homeless avers that it is a non-profit charitable organization providing services to the homeless. It says that it has helped homeless people register to vote and obtain birth certificates. Plaintiff Service Employees International Union, Local 1199, alleges that it is a labor union that engages in voter registration and other election activities on behalf of its members. These allegations fall far short of asserting that any of plaintiffs' members have suffered or will imminently suffer a concrete, actual injury traceable to enforcement of the voter identification requirements. In fact, the complaint contains no reference at all to injury to the plaintiffs' members. While we have noted that an association challenging election procedures need not identify specific voters who will be wronged by election workers because "by their nature, mistakes cannot be specifically identified in advance," *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004), there is no reason to apply this reasoning to absentee ballots already submitted. And neither *Sandusky County* nor any other case suggests that standing can exist in the absence of injury. The scanty information about the plaintiff organizations in the complaint also raises substantial questions about whether the interests at stake here are germane to the organizations' purposes, which clearly are not primarily related to election or voters' rights issues. The weakness of plaintiffs' showing of standing leads us to conclude that their likelihood of success on the merits is not strong.[4]

Even if plaintiffs have standing, there is still reason to question whether they are likely to prevail on many of their allegations with respect to absentee ballots cast after the Secretary issued his October 26, 2006, Directive 2006-78 to all County Boards of Elections. Count One alleges a due process violation arising from the vagueness of the laws, causing the election to be conducted in an unfair manner due to nonuniform application of the law and chilling voters' willingness to exercise their right to vote. Count Two alleges that the vagueness and nonuniform application constitute an equal protection violation. The Directive addresses various provisions that were the subject of plaintiffs' claims of nonuniform application, including the meanings of the terms "current," "government document," and "driver's license number."[5] Thus, the Directive appears to largely obviate the Organizations' concerns with respect to absentee ballots submitted after its issuance. Certainly, its issuance reduces the scope of the disputed issues to a set far smaller than those the TRO encompasses.

Plaintiffs do not challenge the Secretary's authority to issue the Directive. Nor do they deny that it will at least prospectively obviate many of their vagueness and inconsistent treatment concerns. Plaintiffs argue, however, that the Directive may have the effect of disadvantaging or disenfranchising some who have already cast their absentee ballots. This speculation is insufficient to satisfy plaintiffs' burden of demonstrating a strong likelihood of success on the merits. Furthermore, plaintiffs' contention that confusion stemming from the pre-Directive vagueness of terms and inconsistent practices will have had a deterrent or chilling effect on absentee voters is unsubstantiated and too speculative to be cognizable.

---

[3] Plaintiffs submitted a number of declarations detailing evidence of inconsistent practices employed by various County Boards of Elections. None of the declarants, however, asserts any connection with the plaintiff Organizations. Thus, these declarations are not relevant to the standing inquiry.

[4] Judge McKeague's concurring opinion correctly notes that the Northeast Ohio Coalition for the Homeless apparently seeks to assert a form of representational standing never recognized by any court—standing on behalf of the group served by the organization.

[5] The Attorney General states that he is willing to work with plaintiffs to resolve any issues not clarified by the Directive. An amicable resolution of the dispute is obviously far preferable to last-minute litigation that disrupts ongoing electoral processes.

The remaining factors we must consider strongly support staying the district court's orders. The balance of harms in this case significantly favors granting a stay of the TRO. Each day the TRO is in effect, the Secretary is forced to accept absentee ballots that do not comply with the voter identification requirements enacted by the General Assembly. Should the Secretary prevail after a full adjudication of the merits, it will be difficult, if not impossible, for the voter identification requirements to be applied retroactively to those absentee ballots casts during the TRO. "[T]he State will be irreparably injured in its ability to execute valid laws, which are presumed constitutional, for keeping ineligible voters from voting."[6]  *Summit County*, 388 F.3d at 551.  However, the State suffers no harm by being required to preserve all absentee ballots.  As to the potential harm facing the Organizations, if they were to prevail on the claims at issue, the vagueness and nonuniformity of the absentee ballot requirements, they would be irreparably harmed only if any noncomplying ballots were disposed of or destroyed and could not later be counted.  However, the Organizations suffer no injury from the continued enforcement of the voter identification requirements to absentee ballots pending a full resolution on the merits.  If the Organizations prevail, all absentee ballots can be counted without regard to the identification requirements.  Plaintiffs' concerns that the Directive may have the effect of disadvantaging or disenfranchising some who have already cast their absentee ballots can be completely protected by preserving the ballots without further injunctive relief. Therefore, the balance of harms significantly favors granting a stay of the TRO, except for its requirement that the Boards of Elections preserve all absentee ballots in their present form.

The public interest weighs in favor of granting a stay of the TRO.  There is a strong public interest in allowing every registered voter to vote.  *See Summit County*, 388 F.3d at 551; *see also Purcell v. Gonzalez*, ___ U.S. ___, Nos. 06A375 & 06A379, 2006 WL 2988365, at *2 (Oct. 20, 2006).  There is also a strong public interest in permitting legitimate statutory processes to operate to preclude voting by those who are not entitled to vote.  *See Summit County*, 388 F.3d at 551; *see also Purcell*, 2006 WL 2988365, at *2.  Finally, there is a strong public interest in smooth and effective administration of the voting laws that militates against changing the rules in the middle of the submission of absentee ballots.  *See Summit County*, 388 F.3d at 551.  As the Supreme Court recently recognized, court orders affecting elections can themselves result in voter confusion and cause the very chilling effect that plaintiffs claim they seek to avoid.  *See Purcell*, 2006 WL 2988365, at *2.  The TRO issued by the district court needlessly creates disorder in electoral processes, without any concomitant benefit to the public.

After weighing all the factors required, the court concludes that the district court abused its discretion by granting the TRO.

VI.

For the foregoing reasons, we deny the appellee's motion to dismiss the appeal, grant the State's motion to intervene before this court, reverse the district court's denial of the State's motion to intervene as of right, and grant in part the Secretary's motion to stay or vacate the district court's orders, vacating the district court's issuance of the TRO except for its requirement that the Boards of Elections preserve all absentee ballots.

---

[6]In fact, the TRO has already potentially harmed the State by enabling absentee ballots to be submitted without complying with the enjoined provisions.  After full adjudication of the merits, if the Secretary prevails and the voter requirements are deemed enforceable, the district court and the parties will have to address how these ballots should be handled to comport with due process and equal protection concerns.

---

**CONCURRENCE**

---

McKEAGUE, Circuit Judge, concurring. I concur in Judge Gibbons' opinion in its entirety, but write separately to emphasize one point. The notion that plaintiff organizations could obtain emergency injunctive relief from a federal court, relief which has the effect of disrupting an ongoing election process in frustration of the duly enacted will of the people of a sovereign state, based on allegations admittedly unsupported by evidence that any of the organizations' members has been injured or is threatened with imminent injury, represents a disturbing expansion of associational standing principles.

Counsel for plaintiffs admitted at the hearing on the motion for TRO that plaintiffs could not identify a single member of either plaintiff organization that was affected by the alleged deficiencies in the Voter ID law asserted in support of the motion for TRO. TRO hrg. tr. pp. 39-40. Standing, counsel argued, and the district court held, was premised on the teaching of *Sandusky Democratic Party v. Blackwell*, 387 F.3d 565, 573-74 (6th Cir. 2004).

*Sandusky* stands for the proposition that political parties and labor organizations have standing to assert the rights of their members where injury to members, albeit unidentified, was shown to be not speculative or remote, but "real," "imminent" and "inevitable." This showing has not been made in the present record. In the wake of Directive 2006-78, issued by the Secretary on Thursday, October 26, 2006, the possibility that any member of plaintiff organizations has suffered or will imminently suffer injury is, as evidenced by the district court's colloquy with counsel during the hearing on the motion for TRO, purely speculative. The mere possibility of garden variety irregularities does not portend the sort of fundamental unfairness resulting in significant disenfranchisement that would warrant judicial intervention. *See Purcell v. Gonzalez,* ___ S.Ct.___, 2006 WL 2988365, at *2 (Oct. 20, 2006) (recognizing a state's "compelling interest in preserving the integrity of its election process").

Granted, plaintiffs may yet be able to further develop the record in the district court hearing on the motion for preliminary injunction set for Wednesday, November 1, 2006. They would be well advised to do so, for it is their burden to establish standing.

In this vein, one further cautionary note is in order. Insofar as plaintiffs' standing implicitly rests on assertion of the interests of *nonmembers* for whose interests plaintiff Northeast Ohio Coalition for the Homeless advocates, *e.g.*, homeless persons, plaintiffs are operating outside the bounds of traditional associational standing. They rely on a form of representational or third-party standing for which they have cited no controlling or even persuasive precedent. *See Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004) (observing that a party generally cannot rest its claim on legal rights of third parties and that exceptions to this rule have not been looked upon favorably). If plaintiffs mean to rely on the interests of nonmembers to make their case for injunctive relief, they should be prepared to identify legal authority for such an innovation in the established principles of associational or representational standing.

---

## CONCURRING IN PART, DISSENTING IN PART

---

ARTHUR J. TARNOW, District Judge, concurring in part and dissenting in part.  I concur with the Majority's analysis of the jurisdictional question raised and of the State of Ohio's motion to intervene.  I further agree with Majority's statement of the standard of review and the law concerning the district court's grant of a temporary restraining order and/or preliminary injunction.

However, I dissent from the Majority's opinion that the district court abused its discretion when it granted the Plaintiffs' request for a temporary restraining order.  The district court's four part analysis in determining whether to grant the plaintiffs' request for a temporary restraining order correctly stated the law and was well reasoned in its application of the four factors.  Applying the abuse of discretion standard, I find that there was no abuse of discretion.  Moreover, in a recent voting rights case involving a temporary restraining order, the Supreme Court stated that "it was still necessary, as a procedural matter, for the Court of Appeals to give deference to the discretion of the District Court."  *Purcell v. Gonzalez*, 549 U.S.____ (2006)(*per curiam*).  I am of the opinion that the Majority has failed to give this required deference to the district court's decision.

Finally, as the Majority noted in footnote 5, the Attorney General has stated in his Motion to Stay the District Court's Order that it is committed to working towards a consent TRO that obviates any risk of disenfranchisement.  This is a discussion/negotiation that should take place immediately.

In a recent case from the Northern District of Ohio, the Secretary of State came to an agreement with a group of concerned voters over Ohio Revised Code Section 3505.20(A), which required naturalized citizens in Ohio to provide official documentation to prove citizenship if challenged by a poll worker.  *See Boustani, et al. v. Blackwell*, 2006 U.S. Dist. LEXIS 72422 (N. D. Ohio Oct. 4, 2006) *see also Boustani et al. v. Blackwell*, 2006 U.S. Dist. LEXIS 77989 (N.D. Ohio Oct. 26, 2006).  As history in Ohio proves, the parties' concerns of an orderly election that guards against the risk disenfranchisement can and has been achieved through mutual agreement.