NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0283n.06

Case No. 21-1805

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 14, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| A&W X-PRESS, INC., | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| FCA US, LLC, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant - Appellee. | ) | |
| | ) | OPINION |
| | ) | |

Before: GIBBONS, ROGERS, and MURPHY, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. This case involves a dispute over an option contract to renew a lease for property in Michigan. A&W X-Press, Inc. ("A&W") entered a five-year lease agreement on July 1, 2011. The lease provided A&W with a right to renew its tenancy for two additional five-year terms, which A&W first exercised in 2016. In 2019, FCA US, LLC ("FCA") purchased the property, taking fee title and assuming A&W's lease. The parties discussed A&W's second renewal option but disagreed on the fair market rate of the monthly rent. They dispute whether A&W properly exercised its renewal option. A&W sued FCA and filed a motion for a temporary restraining order ("TRO") and preliminary injunction. The district court denied the motion. A&W appeals, arguing the district court abused its discretion in denying injunctive relief. FCA argues this court does not have jurisdiction to review denial of the motion because the district court's order addressed only the TRO. Because the decision at issue is

tantamount to denial of all preliminary injunctive relief, we have jurisdiction over the instant appeal. We affirm the district court's denial of A&W's motion.

# I

On July 1, 2011, A&W entered a lease agreement with Dunn & Mavis, Inc. to rent a 23,350 square foot industrial facility in Warren, Michigan. A&W, a trucking and transportation company, has eighty-five employees and more than two-hundred trucks and trailers on site at the facility; it uses this fleet of vehicles to deliver fresh produce, automobile parts, and medical supplies throughout the United States and Canada.[1] A&W's 2011 lease was for a duration of five years, with the option to renew for two additional five-year terms. The lease specified:

> **OPTION TO RENEW:** Provided Tenant has never been in default of the terms and conditions of the Lease, Landlord shall grant Tenant two (2) Options to Renew the Lease Agreement for five (5) year Lease Terms. *Should Tenant elect to exercise its Option, Tenant shall provide Landlord with ninety (90) days advance written notice, return receipt requested.* The rent schedule for the first five (5) year Renewal Term shall be at a monthly rate of $9,750.00. The rent schedule for the second Renewal Term shall be at a *fair market rate*.

DE 1, Lease Agreement, Page ID 25 (emphases added).

For the first five years of the lease, A&W paid monthly rent of $9,500. In July 2016, A&W exercised its first renewal option and extended the lease through September 30, 2021. Pursuant to the lease, the monthly rent increased to $9,750. Then, in December 2019, FCA purchased the property from Dunn & Mavis. The change of ownership was uneventful until the parties began to

---

[1] The parties disagree about the nature of A&W's business. FCA argued below that "A&W is not a trucking company, does not have significant employees, and does not own a large fleet of vehicles," and merely uses the property at issue to allow other companies to sublease, license, and store trucks and other equipment. DE 9, FCA Resp., Page ID 130. A&W's President, Ray Almoosawi, provided an affidavit indicating that A&W is a trucking company with trucks, trailers, and employees. A&W maintains that the "overwhelming majority of the trucks/property/etc./ located at the Subject Property are, in fact, owned and utilized by A&W." DE 10, A&W Reply, Page ID 326.

discuss A&W's second renewal option in spring 2021. Because the lease agreement's final renewal option set the monthly rent at "fair market rate," the parties exchanged emails outlining their estimates and approaches to calculating the rate. FCA researched fair market value rates for industrial buildings and trailer parking lots and proposed a total monthly rent of $72,863.95. FCA acknowledged this rate was significantly higher than the $9,750 A&W was currently paying, but noted the Detroit real estate market had significantly increased over the last decade and the initial 2011 lease was negotiated during a depressed real estate market. A&W countered that FCA's proposal was "grossly overstated" and proposed a rental rate of $6.00 per square foot. A&W suggested that if the parties could not agree, then they should each obtain an appraisal "with agreed upon parameters for establishing the lease rate." DE 1, Contis Email, Page ID 44. A&W noted that time was "of the essence and it is to the mutual benefit of both parties that an acceptable lease rate is established." *Id.*

Despite several months of email exchanges, the parties could not agree on a fair market rate or an appraisal process. Pursuant to the lease, A&W was required to provide timely written notice of its intent to exercise its option to renew the lease by July 2, 2021. A&W contends that the emails themselves "confirm the fact that . . . [t]he parties agreed to extend the Lease for another 5-year term," leaving determination of fair market rate as the only unresolved issue. DE 1, Compl., Page ID 6. FCA disagrees, asserting that the communications concerned a possible extension and merely discussed the renewal option. On July 20, 2021, FCA, believing that A&W did not provide the 90-day advance written notice and return receipt required by the lease agreement, notified A&W that the lease would not be extended. FCA stated the option to renew was "null and void," the lease would expire September 30, 2021, and A&W was obligated to surrender the premises by the day the lease expired. *Id.* at 80.

A&W filed this action on September 20, 2021, seeking specific performance of the lease's second renewal option and declaratory judgment that FCA is equitably estopped from enforcing the lease's written notice requirement and/or waived its right to demand strict compliance with the notice requirement. A&W also asserted the court should determine the applicable "fair market rate" for the property. A&W filed an *ex parte* motion for a TRO and preliminary injunction pursuant to Federal Rule of Civil Procedure 65 on October 1, 2021. FCA simultaneously initiated a state court action against A&W, seeking possession of the property and declaratory judgment that A&W failed to exercise the lease renewal option.

The district court denied A&W's motion for a TRO and preliminary injunction, styling it as an "Opinion and Order Denying Plaintiff's Motion for Temporary Restraining Order." DE 13, Op. and Order, Page ID 415. The court noted injunctive relief is an extraordinary remedy and applied the Sixth Circuit's four-factor balancing test for considering a motion for a preliminary injunction. The court noted that under Michigan law, an option to lease land is treated as an offer requiring strict compliance. Because A&W did not provide ninety days' written notice to exercise its lease renewal option, the court found A&W failed to demonstrate a strong likelihood of success on the merits. The court held this factor outweighed the other factors, including that A&W would suffer harm to its business if the lease was not renewed, and denied A&W's motion for a TRO.

On appeal, A&W argues the district court abused its discretion in denying the motion for a TRO by failing to correctly analyze and balance the injunctive relief factors and by misinterpreting Michigan's equity jurisprudence.

**II**

"As with every case, we begin with any jurisdictional issues." *Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 566 (6th Cir. 2001). The district court exercised jurisdiction under 18 U.S.C. § 1332.

We have appellate jurisdiction over "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292(a)(1). But we "generally lack[] jurisdiction to hear an appeal of the district court's decision to grant or deny a TRO." *Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1005 (6th Cir. 2006); *see also Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*, 473 U.S. 1301, 1303–04 (1985) ("[T]he established rule is that denials of temporary restraining orders are ordinarily not appealable."). The rationale is that TROs cover limited time periods and typically terminate with a prompt ruling on a preliminary injunction, from which the losing party can appeal, so appeal of a TRO is usually not necessary to protect the rights of the parties. *Ne. Ohio Coal.*, 467 F.3d at 1005. The label the district court attaches to the order is not controlling, however, and we "look to the nature of the order and the substance of the proceeding below to determine whether the rationale for denying appeal applies." *Workman v. Bredesen*, 486 F.3d 896, 904 (6th Cir. 2007) (quoting *Ne. Ohio Coal.*, 467 F.3d at 1005). Courts have allowed interlocutory appeals of TROs in situations where the TRO "threatens to inflict irretrievable harm" or where, instead of preserving the status quo, the TRO acts as a mandatory injunction requiring affirmative action. *Ne. Ohio Coal.*, 467 F.3d at 1006.

The salient question is whether the district court's order denying A&W's motion is operating effectively as a denial of a preliminary injunction, for which 28 U.S.C. § 1292(a)(1) permits interlocutory review. A&W argues this court has jurisdiction because the district court denied its motion, which was for both a preliminary injunction and a TRO. FCA counters that although A&W filed a motion for both a TRO and a preliminary injunction, the district court's order addresses solely the TRO—and therefore this court lacks jurisdiction. "[O]ur jurisdiction is

not controlled by the name that a claimant attaches to a motion or the name that a district court attaches to an order." *Workman*, 486 F.3d at 904.

Here, the district court's denial of the motion had the "practical effect" of denying A&W's request for a preliminary injunction. *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83 (1981). While it is true that the district court's opinion makes no mention of A&W's request for a preliminary injunction, focusing instead on the TRO, the opinion disposes of the motion in its entirety by concluding that A&W was not entitled to the requested relief. The court held A&W "fail[ed] to demonstrate that it is entitled to the extraordinary remedy of injunctive relief." DE 13, Op. and Order, Page ID 425. Furthermore, the same four-factor balancing test is used in determining whether to issue injunctive relief, be it a TRO or a preliminary injunction. *Id.* at 417–18 (citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (delineating the factors relevant to considering a motion for preliminary injunction)). Although it is styled as a TRO denial, in substance the court's order is a denial of the request for a preliminary injunction as well. *See Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 572 (6th Cir. 2002) (finding the district court treated a motion for a "temporary injunction" as one for a preliminary injunction).

Additionally, in the time since the opinion was issued on November 18, 2021, the district court has taken no other action to address A&W's request for a preliminary injunction. TROs have the modest purpose of preserving the status quo to give a court time to determine whether a preliminary injunction is warranted. *See First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993). If the district court's order was meant to address solely the TRO request, surely another order on the preliminary injunction would have followed. And the motion is no longer demarcated as outstanding on the docket, so presumably the court considers the request for a TRO

and preliminary injunction to be fully addressed. For these reasons, A&W's motion for a TRO and preliminary injunction and the district court's ruling thereon are properly postured for our review.

**III**

We review a district court's denial of "a temporary restraining order—where, as here, that denial amounts to the denial of injunctive relief"—for abuse of discretion. *Beacon J. Publ'g Co., Inc. v. Blackwell*, 389 F.3d 683, 684 (6th Cir. 2004). Abuse of discretion extends to clearly erroneous fact-finding and improper application of the governing law. *Id.* We must be left with "a definite and firm conviction that the trial court committed a clear error of judgment." *Workman*, 486 F.3d at 904–05 (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)). We reverse a district court's weighing and balancing of the preliminary injunction factors in only "the rarest of circumstances." *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1175 (6th Cir. 1995).

In considering a motion for a TRO or preliminary injunction, a district court looks to four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm in the absence of preliminary relief; (3) whether the injunctive relief will cause substantial harm to others; and (4) whether the public interest will be served by granting relief. *Ne. Ohio Coal.*, 467 F.3d at 1009; *Thompson v. DeWine*, 976 F.3d 610, 615 (6th Cir. 2020) (per curiam), *cert. denied*, 141 S. Ct. 2512 (2021). "These four considerations are 'factors to be balanced, not prerequisites that must be met.'" *Certified Restoration*, 511 F.3d at 542 (citation omitted). In evaluating these factors, "the likelihood of success on the merits often will be . . . determinative." *Thompson*, 976 F.3d at 615 (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).

The district court did not abuse its discretion in its balancing of the factors relevant to a TRO and preliminary injunction. The court weighed each factor and held A&W's failure to demonstrate a strong likelihood of success on the merits of its equitable estoppel claim doomed its motion. In balancing the remaining factors, the court found this failure weighed heavily against a grant of injunctive relief and outweighed other considerations in A&W's favor. In the absence of clearly erroneous fact finding or improper application of the governing law, this decision was not an abuse of discretion.

**A**

Michigan law governs interpretation of this lease.[2] An option to lease land is "a preliminary contract for the privilege of purchase and not itself a contract of purchase." *Johnson Family Ltd. P'ship v. White Pine Wireless, LLC*, 761 N.W.2d 353, 370 (Mich. Ct. App. 2008) (quoting *Oshtemo Twp. v. City of Kalamazoo*, 257 N.W.2d 260, 262 (Mich. Ct. App. 1977)). This option to lease "is essentially an offer that requires strict compliance," and it does not create or transfer an interest in land "until the option is exercised." *Id.* As the Michigan Supreme Court has explained, an option is merely an offer, and "acceptance must be in compliance with the terms proposed by the option both as to the exact thing offered and within the time specified; otherwise the right is lost." *Le Baron Homes v. Pontiac Hous. Fund*, 29 N.W.2d 704, 706 (Mich. 1947). Michigan courts have held that substantial compliance with the terms of an option is "insufficient to constitute an acceptance." *Id.* at 707 (citation omitted); *see also Bergman v. Dykhouse*, 25 N.W.2d 210, 212 (Mich. 1946).

---

[2] Federal courts sitting in diversity jurisdiction "are to apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

In this case, the option provided:

> **OPTION TO RENEW:** Provided Tenant has never been in default of the terms and conditions of the Lease, Landlord shall grant Tenant two (2) Options to Renew the Lease Agreement for five (5) year Lease Terms. *Should Tenant elect to exercise its Option, Tenant shall provide Landlord with ninety (90) days advance written notice, return receipt requested.* The rent schedule for the first five (5) year Renewal Term shall be at a monthly rate of $9,750.00. The rent schedule for the second Renewal Term shall be at a fair market rate.

DE 1, Lease Agreement, Page ID 25 (emphasis added). The lease clearly outlines that A&W was required to give FCA written notice to accept the option to renew. A&W's first renewal option extended the lease through September 30, 2021, and therefore advance written notice that A&W elected to renew again was due by July 2, 2021. A&W did not provide such notice.

A&W argues the parties' negotiations regarding a "fair market rate" indicate that A&W had exercised its option to renew the lease. Because FCA engaged in negotiations, A&W asserts, FCA has waived the argument that A&W did not strictly comply with the terms of the lease. This cyclical logic is unconvincing. That A&W and FCA made efforts to agree on a fair market rate for the rent does not mean A&W had already agreed to renew the lease. Upon review of the communications between the parties, at no point does FCA recognize or accept that A&W has exercised its option to renew the lease. And, as the district court acknowledged, negotiations of fair market rate "does not unequivocally express A&W's desire to renew the lease" because "it would have been reasonable for the parties to agree on the rent *before* A&W bound itself to a five-year lease extension." DE 13, Op. and Order, Page ID 421 (emphasis added).

A&W next asserts the district court erred by declining to consider equitable remedies that could relieve A&W from its noncompliance with the option terms. The district court stated "it is not clear whether, under Michigan law, the court may consider equitable remedies to relieve A&W from its noncompliance with the option terms." *Id.* at 419. A&W points to *Tel-Towne Properties*

*Groups v. Toys "R" Us-Delaware, Inc.*, 630 F. Supp. 2d 766, 773–74 (E.D. Mich. 2007), for the proposition that the district court has discretion to grant equitable relief to a tenant that does not exercise its renewal option in a timely manner. But, as the district court noted, at least one Michigan court has rejected the *Tel-Towne* reasoning. *See L J & S Dev., LLC v. Boar's Head Provisions Co.*, No. 332379, 2017 WL 4015743, at *3 (Mich. Ct. App. Sept. 12, 2017) (per curiam). In *L J & S*, the Michigan Court of Appeals held in an unpublished opinion that *Tel-Towne* was nonbinding and unpersuasive in its assertion that "special circumstances" allowed the court to grant the party equitable relief from strict compliance. *Id.* Furthermore, the district court here indicated that even if it had discretion to grant equitable relief, such relief was not warranted because A&W failed to demonstrate a strong likelihood of success on the merits. Michigan Supreme Court authority plainly states the right to accept an option is lost absent strict compliance, and A&W failed to supply advance written notice. The district court did not abuse its discretion by adhering to Michigan's principle of strict compliance.

A&W points to a handful of cases in which Michigan courts have ruled in tenants' favor, asserting that FCA engaged in bad faith conduct and equitable relief is warranted. But all of the cases A&W cites are distinguishable. In *Pleger v. Bouwman*, for example, the plaintiffs "were led to believe that they had effectively and validly communicated to defendants their intention to exercise the option" after they provided oral notice. 233 N.W.2d 82, 84 (Mich. Ct. App. 1975) (per curiam). Here, A&W did not provide oral notice, and none of the emails between the parties indicate that FCA cajoled A&W into thinking it had already provided notice. FCA repeatedly mentioned that the discussions about fair market rate were for a *possible* lease extension and

A&W's option to renew.[3]  Similarly, *Lakeside Oakland Development, L.C. v. H & J Beef Co.* is inapposite because the parties did not rely on an oral agreement.  644 N.W.2d 765, 770 (Mich. Ct. App. 2002).  And in *Dilusso Building Co. v. Concord Industrial Group*, the Michigan Court of Appeals relied on the fact that the parties' contract had an "ambiguous term in the option agreement regarding the manner of exercising the options."  No. 233912, 2003 WL 462425, at *3 (Mich. Ct. App. Feb. 21, 2003) (per curiam).  The lease in this case, by contrast, is not ambiguous as to how A&W could exercise its option to renew.  That Michigan courts have not precluded the possibility of equitable relief under appropriate circumstances does not compel a conclusion that the district court improperly applied the governing law under different factual circumstances.

For these reasons, the district court did not improperly apply the governing law when it determined equitable remedies were not warranted where A&W failed to strictly comply with the option terms.  Nor did it abuse its discretion by holding A&W failed to show a strong likelihood of success as to its equitable estoppel claim.

**B**

After finding A&W failed to demonstrate a strong likelihood of success on the merits, the district court considered the remaining three factors relevant to injunctive relief.  The court found that A&W was likely to suffer irreparable harm if it were forced to vacate the premises, as A&W alleged there were few locations available to accommodate its trucking business, particularly on short notice, and that eviction would therefore put it out of business.  The court next found that granting preliminary injunctive relief would cause minimal harm to others, as FCA's contention

---

[3] A&W points to three emails that it contends "confirmed the parties' agreement to extend the lease for another term."  CA6 R. 18, Appellant Br., at 2–3.  But this contention is misleading, as the emails contain no such language.  *See* DE 1, O'Neil Email, Page ID 41–42; DE 1, Contis Email, Page ID 44; DE 1, Von Bernthal Email, Page ID 47.

was merely that an injunction would delay its ability to prepare the property for use as a parking lot. Finally, the court held that the fourth factor—whether the public interest will be served by granting relief—did "not clearly favor either party." DE 13, Op. and Order, Page ID 424. A&W had asserted an injunction was in the public interest because its business involved delivering food and medicine, while FCA argued an injunction was contrary to public interest because of the high value of clear and consistent contract enforcement. The district court balanced these four factors and held that although the "irreparable harm" factor favored A&W, it did not overcome the weaknesses of A&W's case on the merits. Because A&W could not establish the likelihood of success on its claims, the court denied its motion for preliminary injunctive relief.

On appeal, A&W urges the court to hold that the district court gave insufficient weight to the "irreparable harm" factor, which it frames as the most important consideration. But A&W reads the relevant caselaw too selectively, pointing to an unpublished case in which irreparable harm was treated as the most significant factor. *See Lexington-Fayette Urb. Cnty. Gov't v. BellSouth Telecommc'ns, Inc.*, 14 F. App'x 636, 639 (6th Cir. 2001). It is true that irreparable injury is an essential factor in the balancing test, *see D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019), but our court has repeatedly emphasized that the likelihood of success prong is the most important. *See, e.g.*, *O'Toole v. O'Connor*, 802 F.3d 783, 792 (6th Cir. 2015); *Jones v. Caruso*, 569 F.3d 258, 277 (6th Cir. 2009).

Finally, A&W argues there is no evidentiary support for the district court's finding that the third factor, which compares hardships of the parties, favored neither side. We disagree. The district court's opinion reflects that both parties would suffer hardship: if A&W did not receive the injunction, its business would suffer. If A&W *did* receive the injunction, FCA's business would suffer by being unable to use its property as it intended. The district court's decision does

not reflect flawed factfinding such that this court is left with "a definite and firm conviction that the trial court committed a clear error of judgment." *Workman*, 486 F.3d at 904–05.

**IV**

Ultimately, we reverse a district court's weighing and balancing of the preliminary injunction factors in only "the rarest of circumstances." *Moltan Co.*, 55 F.3d at 1175. This case does not present such circumstances. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). In the absence of any clearly erroneous fact finding or improper application of the governing law, the court's decision to deny A&W's motion for a TRO and preliminary injunction was not an abuse of discretion. We affirm.