RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0297P (6th Cir.)
File Name: 02a0297p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

| | |
|---|---|
| JANE B. CAUDILL; RICHARD T. CAUDILL; CHRISTOPHER CAUDILL; LARRY T. CAUDILL; MARIAN PAVIONI, *Plaintiffs-Appellants,*<br><br>*v.*<br><br>EUBANKS FARMS, INC., a Kentucky Corporation; M. F. EUBANK; JOHN EUBANK; RICHARD S. EUBANK; FRANCES K. EUBANK; MARTHA E. GRUHOT, *Defendants-Appellees.* | No. 01-5313 |

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 00-00407—Henry R. Wilhoit, Jr., District Judge.

Argued: July 16, 2002

Decided and Filed: September 4, 2002

Before: SUHRHEINRICH, SILER, and GILMAN, Circuit
Judges.

1

———————————

**COUNSEL**

**ARGUED:** J. Robert Lyons, Jr., WOODWARD, HOBSON & FULTON, LLP, Lexington, Kentucky, for Appellants. Grover A. Carrington, WHITE, PECK, CARRINGTON, WILLIAMS & NEAL, LLP, Mt. Sterling, Kentucky, for Appellees. **ON BRIEF:** J. Robert Lyons, Jr., Glen S. Bagby, WOODWARD, HOBSON & FULTON, LLP, Lexington, Kentucky, for Appellants. Grover A. Carrington, WHITE, PECK, CARRINGTON, WILLIAMS & NEAL, LLP, Mt. Sterling, Kentucky, for Appellees.

———————————

**OPINION**

———————————

SUHRHEINRICH, Circuit Judge.  Plaintiffs appeal the district court's dismissal of this diversity action arising out of claims for dissolution of a corporation and an accounting. The district court dismissed the case on the basis of *Burford* abstention.  We **AFFIRM.**

**I.**

Plaintiffs are shareholders in a closely held Kentucky corporation, Eubanks Farms, Inc.  In their complaint, Plaintiffs allege that a shareholder deadlock exists and that the business of the corporation can no longer be conducted to the advantage of the shareholders generally.  Plaintiffs requested that Defendant Eubanks Farms, Inc. be dissolved pursuant to Ky. Rev. Stat. § 271B.14 on the grounds of deadlock, and its affairs be wound up.  Plaintiffs also sought an accounting given their belief that one or more of the individual Defendants had engaged in certain transactions with Defendant Eubank Farms, Inc., and that as a result of these transactions those Defendants received benefits which were not available to shareholders generally, and for which

*Abstention in Actions for Damages*, 99 Colum. L. Rev. 1871, 1881 n.53 (1999).

In short, for all the foregoing reasons, the district court did not abuse its discretion in abstaining under *Burford.*

### III.

The order of the district court granting Defendants' motion to dismiss is **AFFIRMED**.

Defendant Eubank Farms suffered a detriment. They brought suit in federal court on the basis of diversity jurisdiction.

Defendants filed a motion to dismiss, arguing that the district court should abstain. The district court granted the motion, holding that abstention was appropriate under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The district court held that abstention was appropriate because "the Kentucky General Assembly and Kentucky Courts have worked to develop and preserve a uniform and coherent policy with respect to corporate dissolution," and that "the disposition of deadlocked corporations is certainly a matter of substantial public concern."

Plaintiffs filed this timely appeal.

### II.

This Court reviews a district court's decision to abstain for abuse of discretion. *See United States v. Kentucky*, 252 F.3d 816, 825 (6th Cir.) (stating that "[w]hile we normally review de novo a district court's decision to abstain, . . . we have at least on one occasion reviewed such a decision for abuse of discretion;" observing that, in any event, there is little practical difference between the two standards in abstention cases because the district court's discretion is narrowed by its obligation to exercise discretion in all but the most extraordinary cases), *cert. denied*, 122 S. Ct. 396 (2001).

Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). The doctrine is based on principles of federalism and comity. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996). In *Quackenbush*, the Supreme Court articulated the doctrine as follows:

Ultimately, what is at stake is a federal court's decision, based on a careful consideration of the federal interests

in retaining jurisdiction over the dispute and the competing concern for the "independence of state action," *Burford*, 319 U.S., at 334, . . . that the State's interests are paramount and that a dispute would best be adjudicated in a state forum. See *NOPSI, supra,* 491 U.S., at 363, . . . (question under Burford is whether adjudication in federal court would "unduly intrude into the processes of state government or undermine the State's ability to maintain desired uniformity"). This equitable decision balances the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining "uniformity in the treatment of an 'essentially local problem,'" 491 U.S., at 362, . . . and retaining local control over "difficult questions of state law bearing on policy problems of substantial public import[.]" *Colorado River*, 424 U.S., at 814.

*Id.*

In *Burford,* the Sun Oil Company challenged in federal court the Texas Railroad Commission's grant of an oil drilling permit. The Supreme Court held that abstention was necessary because the order was part of a complex regulatory system established under Texas law to further the state's interest in oil and gas resources. *See Burford*, 319 U.S. 325-32. The Court emphasized that Texas law consolidated judicial review of commission orders in a single state district court, which allowed the courts to acquire specialized knowledge of the oil and gas regulations and industry, and therefore act as "working partners with the Railroad Commission in the business of creating a regulatory system for the oil industry." *Id.* at 326.

The Supreme Court has subsequently explained that *Burford* abstention is appropriate where timely and adequate state-court review is available and (1) a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the

incorporate in the state. We see no reason to disturb important state interests in this case either.

The Second Circuit has reached a similar conclusion. There, as here, a shareholder brought suit to obtain dissolution of a New York corporation. The Court held:

This case implicates *Burford*, given the comprehensive regulation of corporate governance and existence by New York.

Under these circumstances, abstention would avoid needless interference with New York's regulatory scheme governing its corporations. New York has a strong interest in the creation and dissolution of its corporations and in the uniform development and interpretation of the statutory scheme regarding its corporations. . . . Moreover, to exercise jurisdiction over a dissolution of a state corporation would allow "the possibility of federal dissolution actions, based on [state statutes], being commenced in a number of different districts in which a particular . . . corporation was subject to service, thereby placing an onerous burden on the corporation. . . .

In addition, every federal court that has addressed the issue of dissolving state corporations has either abstained or noted that abstention would be appropriate, assuming jurisdiction existed.

*Friedman*, 38 F.3d at 671 (citing cases).

Finally, as one commentator has advocated, "[t]hrough the repeated adjudication of actions to dissolve close corporations, the state courts acquire a depth of knowledge about the complex factual circumstances surrounding dysfunctional corporations that allows them to develop an understanding of when dissolution is required and when other remedies are more appropriate." Lewis Yelin, Note, *Burford*

a "corporate divorce" prevents it from terminating the life of a corporation, which depends upon state law for its existence, just as a federal court's lack of subject matter jurisdiction over divorce proceedings avoids interfering with state laws governing domestic relations. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (holding that the domestic-relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees").

Moreover, as we held in the unpublished decision of *Hunter v. SMS, Inc.*, 843 F.2d 1391, 1988 WL 30056, at *15 (6th Cir. Apr. 6, 1988) (unpublished per curiam), involving a similar statutory scheme under Michigan law:

We have little difficulty in finding that the State of Michigan has enacted a comprehensive legislative scheme governing businesses which elect to incorporate in that state. Mich. Comp. Laws Ann. §§ 450.62, et. seq., 450.1101, et seq. The state has a substantial and overriding interest in the regulation of corporations seeking the benefits and protections of its laws and the privilege of doing business within its borders. The state should be permitted to exercise control over the internal affairs of its domestic corporations free from interference by federal courts, particularly where the issue is whether the corporation should be permitted to continue in existence or be dissolved. Moreover, the legislature has provided a forum with specialized competence in the areas of internal corporate matters. Jurisdiction over corporate dissolution rests exclusively with the circuit court of the county in which the registered office of the corporation is located. Mich. Comp. Laws Ann. § 450.1825(1).

Although we are not bound by an unpublished opinion, we agree with this reasoning and adopt it here. Like Michigan, the Kentucky Legislature has enacted a comprehensive legislative scheme to govern businesses which elect to

result in the case then at bar," or (2) the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989) (quotation omitted) ("*NOPSI*"). *See also Ada-Cascade Watch Co. v. Cascade Res. Recovery, Inc.*, 720 F.2d 897, 903 (6th Cir. 1983) (stating that *Burford* enunciated two factors which justify abstention, namely the presence of a complex state regulatory scheme which would be disrupted by federal review, and the existence of a state-created forum with specialized competence in the particular area).

### A.

Plaintiffs argue that the district court erred because *Burford* abstention is limited to situations involving a particularized state administrative proceeding and specialized judicial review. Thus, Plaintiffs contend that *Burford* abstention was not meant to be applied to corporate dissolutions. Plaintiffs claim *NOPSI* limited the use of *Burford* abstention to situations where state administrative agencies are involved. We disagree.

In *NOPSI*, a utility company that had been ordered by the Federal Energy Regulatory Commission to pay part of the building and operating costs of a nuclear reactor sought a rate increase from the Council of the City of New Orleans. The council was the local ratemaking body with final authority over the utility's retail rates. *NOPSI*, 491 U.S. at 355. The council denied the rate increase, and the utility sought an injunction in federal court against enforcement of the council's order and a declaration that the utility was entitled to a rate increase. The utility claimed that federal law required the council to allow it to recover its share of the cost of the reactor.

The Supreme Court reversed the district court's dismissal under *Burford,* holding that the "case [did] not involve a state-law claim, nor even an assertion that the federal claims [were] in any way entangled in a skein of state law that must be untangled before the federal case can proceed," *NOPSI*, 491 U.S. at 361 (internal quotation marks omitted), and because there was no serious threat of conflict between adjudication of the federal claim presented and the state's interest in ensuring uniformity in ratemaking decisions.

> While *Burford* is concerned with protecting complex state administrative processes from undue federal influence, it does not require abstention whenever there exists such a process, or even in all cases where there is a potential for conflict with state regulatory law or policy. . . . Here, NOPSI's primary claim is that the Council is prohibited by federal law from refusing to provide reimbursement for FERC-allocated wholesale costs. Unlike a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors, federal adjudication of this sort of pre-emption claim would not disrupt the State's attempt to ensure uniformity in the treatment of an essentially local problem.

*NOPSI*, 491 U.S. at 362 (internal quotation marks omitted). Although the foregoing language suggests that *Burford* may be as limited as Plaintiffs indicate, these statements must not be taken out of context, because in *NOPSI* the only issue presented was one of federal preemption, which overrides any state interest. Thus, there was no fear of federal disruption of state administrative processes, because in that instance the federal interest was superior. Indeed, the Supreme Court explicitly stated that the principles underlying *Burford* were "not implicated" because the central issue "does not demand significant familiarity with, and will not disrupt state resolution of, distinctly local regulatory facts or policies." *NOPSI*, 491 U.S. at 364.

affairs of a domestic corporation of the state." *Id*. at 185. The plaintiffs have offered no basis, nor have we discovered one, to depart from this reasoning in the present case.

The United States District Court for the Eastern District of New York drew an important distinction between discretionary claims seeking equitable relief relating to a corporation, such as dissolution, and common law claims arising out of actions that the corporate officers might have taken, such as breach of fiduciary duty, breach of contract, and allegations of fraud. *Feiwus*, 43 F. Supp. 2d at 290-91 (dismissing the plaintiff's equitable claims seeking dissolution of a New York corporation, but staying the plaintiff's legal claims for damages pending the resolution of the discretionary claims in state court). The district court explained that "while a federal court may abstain from exercising jurisdiction over discretionary claims for equitable relief such as a demand for corporate dissolution or buy-out, the Court may not relinquish jurisdiction over common law claims for damages." *Id*. at 290; *see also Friedman*, 38 F.3d at 671 (explaining that abstention is appropriate where a plaintiff brings discretionary claims seeking equitable relief because of the state's interest "in the uniform development and interpretation of the statutory scheme regarding its corporations").

This distinction counsels the federal courts against abstaining in corporate actions unless the very existence of the corporation—itself a creature of state law—is called into question. *See Conklin v. United States Shipbuilding Co.*, 140 F. 219, 222 (C.C.D.N.J. 1905) ("The corporation is the creature of the state. It derives its life from the state. It possesses the powers conferred by the state. The period of its existence is determined solely by the will of the state."), *quoted in Feiwus*, 43 F. Supp. 2d at 296. A corporation, in this sense, takes on aspects of a marriage. The dissolution of a corporation might in fact be thought of as a "corporate divorce." Taking this analogy one step further, a federal court's decision to abstain in equitable actions seeking such

unsatisfied, and the corporation is insolvent; or the corporation has admitted in writing that the creditor's claim is due and owing and the corporation is insolvent. *Id.* § 271B.14-300(3). Like shareholder dissolution proceedings, venue for creditor dissolutions lies in the county of the corporation's principal office. *Id.* § 271B.14-310(1).

Section 271B.14-310 includes additional procedures for judicial dissolution. It provides that it shall not be necessary to make shareholders parties to a corporate dissolution proceeding unless relief is sought against them individually. *Id.* § 271B.14-310(2). Finally, the statute instructs that the court may issue injunctions, appoint a receiver or custodian pendente lite, take other action necessary to preserve the corporate assets, and carry on the business of the corporation until a full hearing can be held. *Id.* § 271B.14-310(3).

Plaintiffs claim that the judicial dissolution statute does not demonstrate a complex regulatory scheme. They further argue that the only type of dissolution in the statute that remotely approaches the requirements for granting *Burford* dissolution is the proceeding by the attorney general, because the statute outlines important state interests as the statutory basis for attorney general dissolution and limits suit to one specific court, the Franklin County Circuit Court.

This argument overlooks the important state interests implicated in a shareholder dissolution. As early as 1935, the Supreme Court recognized the propriety of federal courts abstaining in corporate dissolution actions. *Pennsylvania v. Williams*, 294 U.S. 176, 182-86 (1935) (holding that the district court erred in exercising jurisdiction over a shareholder's complaint seeking the liquidation of a Pennsylvania corporation, because state statutes established a mechanism for the shareholder to achieve the same results). The Court in *Williams* explained that "[i]t has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve control of or interference with the internal

Moreover, in a subsequent case, *Quackenbush,* the Supreme Court emphasized that there is no "formulaic test for determining when dismissal is appropriate under *Burford*." *Quackenbush*, 517 U.S. at 727. There, the California Insurance Commissioner, as trustee for insolvent reinsureds, brought suit in state court to recover reinsurance proceeds under common law tort and contract theories. The reinsurer removed the case to federal court. The district court remanded the action on the basis of *Burford.* The Supreme Court ruled that the district court's abstention was erroneous, because *Burford* abstention does not apply to suits seeking damages. *Id.* at 730. Significantly, the Supreme Court did *not* base its ruling on the fact that a state court rather than an agency was chosen to implement California's insurance scheme. *Id.* at 733 (Kennedy, J., concurring) ("The fact that a state court rather than an agency was chosen to implement California's scheme provided more reason, not less, for the federal court to stay its hand."). *See also Nelson v. Murphy*, 44 F.3d 497, 500-01 (7th Cir. 1995) (stating that an agency's role in a dispute is not essential to justify *Burford* abstention); *Friedman v. Revenue Mgmt.*, 38 F.3d 668, 671 (2d Cir. 1994) (affirming exercise of *Burford* abstention in action seeking the involuntary dissolution of a state corporation in the absence of agency action); *Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289, 294-303 (E.D.N.Y. 1999) (abstaining in an action seeking the involuntary dissolution of a state corporation under the state's business corporations law); *but see St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 589 (5th Cir. 1994) ("The concerns governing the *Burford* abstention doctrine are not present in the instant case. St. Paul's lawsuit does not involve a state administrative proceeding."). In short, Plaintiffs' reliance on isolated references to state administrative agencies in *NOPSI* in support of its argument that *Burford* is limited to actions involving state administrative agencies is unpersuasive.

Plaintiffs also argue that *Ada-Cascade Watch, supra*, outlines strict standards for applying *Burford* abstention and requires a state-created forum with specialized competence in

the particular area. *See Burford*, 319 U.S. at 325 (noting that the Texas legislature had established a system of thorough judicial review of Railroad Commission orders, which could be appealed to a single state district court in Travis County, and then reviewed by a branch of the court of civil appeals and the state supreme court); and *Ada-Cascade Watch*, 720 F.2d at 903, 905 (finding that the State of Michigan has a complex system of permit review and approval process for hazardous waste facilities, including centralized judicial review in Ingham County Circuit Court).

Plaintiffs' argument ignores this Court's holding in *MacDonald v. Village of Northport, Michigan*, 164 F.3d 964 (6th Cir. 1999). There, landowners sued the village and the Michigan State Treasurer relating to the ownership and land use of a portion of a platted street. The Michigan Land Division Act, enacted by the state legislature to govern lawsuits and plat changes, required that suits be filed in the circuit court in which the subdivision covered by the plat is located. *Id.* at 968 (citing Mich. Comp. Laws Ann. § 560.222). We held that the district court properly abstained because Michigan law provides a regulatory scheme to address disputes relating to land use. In particular, we noted that "Michigan has established a policy and has consolidated judicial review of these cases in the local forums best suited to adjudicate the local issues and facts raised in such cases." *Id.* Here, as in *MacDonald*, judicial review is not concentrated in any one single court, but rather placed in local forums within the courts of general jurisdiction. *See* Ky. Rev. Stat. § 271B.14-310(1).

In sum, Plaintiffs' arguments that *Burford* abstention is unavailable because no state *administrative* agency is involved and judicial review is not centralized in a single district court are unavailing.

**B.**

Plaintiffs also contend that even if *Burford* abstention applies where no state administrative agency is involved, this case does not meet the standards for abstaining. Section 271B.14-300 governs judicial dissolution of Kentucky corporations.[1] Shareholder dissolution may be accomplished if it is established that the directors are deadlocked in the management of corporate affairs, the shareholders are unable to break the deadlock, and the deadlock is causing either irreparable injury to the corporation, or preventing the business of the corporation from being conducted to the shareholders' benefit. Ky. Rev. Stat. § 271B.14-300(2)(a). Shareholder dissolution may also be obtained if the directors or those in control of the corporation have acted, are acting, or will act in a fraudulent manner. *Id.* § 271B.14-300(2)(b). Third, dissolution may also be obtained if it is shown that the shareholders are deadlocked in voting power and have failed within a certain period of time to elect successors to directors whose terms have expired. *Id.* § 271B.14-300(2)(c). The statute further provides that venue for a shareholder dissolution suit "shall lie in the county where a corporation's principal office (or, if none in this state, its registered office) is or was last located." Ky. Rev. Stat. § 271B.14-310(1).

The statute also provides for dissolution in a proceeding by the attorney general if the attorney general establishes that the corporation obtained its articles of incorporation through fraud, or the corporation has continued to exceed or abuse the authority conferred upon it by law. Ky. Rev. Stat. § 271B.14-300(1). Venue for dissolution actions by the attorney general lie in Franklin County. *Id.* § 271B.14-310(1). Judicial dissolution is also available in a proceeding by a creditor if the creditor establishes that its claim has been reduced to judgment, the execution on the judgment is returned

---

[1]Subtitle 14 of Title 23 of the Kentucky Revised Statutes, which governs Private Corporations and Associations, also contains procedures for Voluntary Dissolution and Administrative Dissolution.