RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0288p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

Nos. 08-2068/2079
SAGINAW HOUSING COMMISSION;
DOES 1-300,
                    *Plaintiffs-Appellees,*

        Nos. 08-2068/2069/2079/2082

    *v.*

BANNUM, INCORPORATED,
                    *Defendant-Appellant.*


Nos. 08-2069/2082
SAGINAW SCHOOL DISTRICT,
                    *Plaintiff-Appellee,*

    *v.*

BANNUM, INCORPORATED,
                    *Defendant-Appellant,*

CITY OF SAGINAW,
                    *Defendant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
Nos. 08-12148; 08-12154—Thomas L. Ludington, District Judge.

Argued: April 23, 2009

Decided and Filed: August 17, 2009

Before: MOORE and McKEAGUE, Circuit Judges; FORESTER, Senior District Judge.[*]

_____

[*]The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

––––––––––––––––––

**COUNSEL**

**ARGUED:** Russell C. Babcock, THE MASTROMARCO FIRM, Saginaw, Michigan, for Appellant. Robert A. Jarema, SMITH BOVILL, P.C., Saginaw, Michigan, R. Drummond Black, CURRIE KENDALL, PLC, Midland, Michigan, for Appellees. **ON BRIEF:** Russell C. Babcock, Victor J. Mastromarco, Jr., THE MASTROMARCO FIRM, Saginaw, Michigan, for Appellant. Robert A. Jarema, SMITH BOVILL, P.C., Saginaw, Michigan, R. Drummond Black, Peter A. Poznak, CURRIE KENDALL, PLC, Midland, Michigan, for Appellees.

––––––––––––––––––

**OPINION**

––––––––––––––––––

McKEAGUE, Circuit Judge. Bannum, Inc. obtained a permit from the City of Saginaw to build a halfway house in Saginaw. After Bannum received its permit, the Saginaw Housing Commission and the School District of the City of Saginaw both filed complaints in Saginaw circuit court seeking injunctions against Bannum's construction of the halfway house. Bannum removed both actions to the United States District Court for the Eastern District of Michigan. The district court then remanded the School District action back to state court because, as the City of Saginaw was also a defendant, complete diversity was not satisfied. The district court also dismissed the Housing Commission's action based on *Burford* abstention. For the reasons set forth below, we dismiss Bannum's appeal with regard to the School District action (Nos. 08-2069, 08-2082) and reverse and remand the action involving the Housing Commission (Nos. 08-2068, 08-2079).

**I.**

Bannum, Inc. is a private corporation that regularly contracts with the Federal Bureau of Prisons ("BOP") to operate Residential Re-entry Centers ("RRCs"). Bannum is incorporated in Kentucky and has its principal place of business in Florida. Bannum

runs RRCs in Alabama, Florida, Georgia, Mississippi, Nevada, North Carolina, and Texas.

RRCs are halfway houses to which the BOP transfers prisoners approaching their release dates and probationers under supervised release. The BOP provides extensive regulations for RRCs. The RRC allows those staying there to transition into the community, finding places to live and work, while remaining subject to supervision by the RRC. Bannum employees monitor and supervise those staying at the RRC, but Bannum employees do not have weapons or uniforms. They also do not have the authority to stop those staying at the RRC from leaving the facility. Unauthorized excursions are instead reported to federal authorities.

The BOP published notice that it would seek bids for a new RRC in Saginaw, Michigan. Intending to submit a bid, Bannum contacted Saginaw city authorities to determine how best to comply with local zoning ordinances. Bannum sent a letter to John Stemple, the Zoning Development Coordinator for Saginaw. In the letter, Bannum requested information on where in Saginaw it could locate an RRC. Stemple informed Bannum that "[t]hese types of facilities are permitted as a special land use after approval by the Planning commission in an M-1 Light Industrial Zoning District and they are permitted by right in the M-2 General Industrial Zoning District."

Bannum purchased 2.2 acres of property at 2209 Norman Street in Saginaw in order to construct the RRC. Bannum submitted a site plan review form to the Saginaw Planning Commission on October 11, 2007. On October 23, 2007, the Planning Commission held a public meeting and unanimously approved Bannum's site plan.[1] Bannum received its building permit on April 24, 2008. It then began construction on its RRC in Saginaw. *Id.*

On May 8, 2008, the Saginaw Housing Commission ( the "Commission") and three hundred unnamed plaintiffs filed a complaint against Bannum in the Saginaw

---

[1]The approval order requested minor modifications to the order that are not relevant to this appeal.

Circuit Court and sought a temporary restraining order and an injunction. SHC is a Michigan non-profit municipal commission that "exists to develop and rehabilitate affordable housing in Saginaw." The complaint alleged that Bannum's RRC violated Saginaw zoning ordinances and that SHC would suffer irreparable harm if the RRC operated at that location. The Saginaw Circuit Court granted the TRO on May 7, 2008. On May 12, the circuit court held a hearing on the TRO. After the hearing, the circuit court lifted the TRO.

On May 15, 2008, the School District of the City of Saginaw (the "School District") filed a complaint in Saginaw Circuit Court. The complaint named Bannum and the City of Saginaw ("City") as defendants. It alleged that the RRC was a penal institution and, as such, required a special use permit. The complaint alleged that Bannum had not received a special use permit and that any construction or operation without a special use permit was a nuisance per se. Based on these facts, the School District alleged that the RRC would be a nuisance per se and a nuisance in fact. The nearest school is about 750 feet away from Bannum's property.[2]

The School District also moved to consolidate its complaint against Bannum with the Commission's complaint against Bannum. Before the circuit court could act on the motion to consolidate, Bannum filed a notice of removal in both the action brought by the Commission and the action brought by the School District.

Bannum's notices of removal relied on diversity to establish the district court's subject matter jurisdiction. There was no issue regarding Bannum's diversity from both the Commission and the School District. However, in the School District complaint, the School District had also named the City as a defendant. Bannum's notice of removal contended that the School District had fraudulently joined the City, and therefore the City's presence did not defeat diversity jurisdiction.

---

[2]Bannum's counsel asserts, on information and belief, that there are no residents near the Bannum property and that several buildings and an elevated roadway separate the Bannum property from the school.

Once the matter was before the district court, both the Commission and the School District filed motions to return the matter to state court.  The Commission's motion contended the district court should abstain, while the School District's motion sought a remand because the City's presence in the action prevented the district court from exercising subject matter jurisdiction.  The Commission later sought to add the City as a defendant in its complaint, alleging a due process violation.  Bannum, meanwhile, filed a motion to dismiss both claims.

After a consolidated hearing, the district court found that the City was properly joined in the School District's complaint, defeating diversity jurisdiction, and that abstention was appropriate with regard to the Commission's action.  Accordingly, the district court remanded both cases to state court.  In addition, it denied without prejudice both the Commission's motion to amend and Bannum's motion to dismiss.

Bannum filed a motion for reconsideration, which the district court denied.  Bannum then filed a notice of appeal.

## II.

A district court lacks subject matter jurisdiction in a diversity action where the parties are not completely diverse.  *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999).  However, "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).  Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action.  *Jerome-Duncan*, 176 F.3d at 907.  If the removing party does not demonstrate fraudulent joinder, the district court must remand back to state court based on the lack of subject matter jurisdiction.  *Id.* Because a remand based on the absence of fraudulent joinder is based on a lack of subject matter jurisdiction, such a remand is generally immune from appellate review. *Hernandez v. Seminole County, Fla.*, 334 F.3d 1233, 1237 (11th Cir. 2003); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 409-10 (7th Cir. 2000); *Am. Home Assurance Co. v. Insular Underwriters Corp.*, 494 F.2d 317, 319 (1st Cir. 1974).  Remands based on

a lack of subject matter jurisdiction are unreviewable even where the district court erred in its assessment of its jurisdiction. *Volvo Corp. of Am. v. Schwarzer*, 429 U.S. 1331, 1333 (1976); *Ohio v. Wright*, 992 F.2d 616, 617 (6th Cir. 1993) (en banc).

There are, however, several limited exceptions to the unreviewability of remands to state court. *See* 28 U.S.C. § 1447(d). The only exception at issue in this appeal is whether the district court made "a substantive decision on the merits of a collateral issue." *See, e.g.*, *Regis Assoc. v. Rank Hotels (Mgmt.) Ltd.*, 894 F.2d 193, 194 (6th Cir. 1990). Collateral issues under this exception include decisions such as abstention-based remands and remands based on the interpretation of a forum selection clause. *Dawalt v. Purdue Pharma, L.P.*, 397 F.3d 392, 399 (6th Cir. 2005).

Both the School District and the City are citizens of Michigan for purposes of diversity. Bannum thus based its assertion of diversity on an allegation that the School District had fraudulently joined the City as a defendant. The district court found that there was no fraudulent joinder and remanded the School District's claim to Saginaw Circuit Court. As the remand order was based on the district court's assessment of its own jurisdiction, it is generally unreviewable regardless of whether it reached the correct result.

Bannum argues that one of the exceptions to the bar on reviewing remand orders applies because the district court made substantive decisions on the merits of collateral issues. Specifically, Bannum alleges "the District Court found that the School District had a colorable case against the City of Saginaw" and that the Court addressed the issue of standing. These arguments were part of the district court's assessment of fraudulent joinder. As such, they were part of a remand based on jurisdiction, not any sort of collateral order. *Compare Dawalt*, 397 F.3d at 399. Therefore, the remand order is unreviewable.

## III.

Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). A district court's decision to abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), is reviewed de novo.[3] *Habich v. City of Dearborn*, 331 F.3d 524, 530 (6th Cir. 2003).

*Burford* abstention arose out of a conflict involving state oversight of oil fields in Texas. The Supreme Court observed that, in certain cases, abstention "further[s] the harmonious relation between state and federal authority" and that, when faced with an equitable claim, federal courts "should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." 319 U.S. at 318, 332. In the case before it, an oil company challenged a state administrative agency's grant of a drilling permit to another oil company. 319 U.S. at 317. The Supreme Court found that the regulation of Texas oil fields was "as thorny a problem as has challenged the ingenuity and wisdom of legislatures." *Id.* at 318. The nature of the oil fields required the fields to be regulated as units, and Texas vested regulatory authority in the Texas Railroad Commission. *Id.* at 319-20. Texas required all appeals from Texas Railroad Commission decisions be taken "to a state district court in Travis County" and then, through appeals, to a state circuit court and the state supreme court. *Id.* at 325. Given the complexity of oil field regulation, the unified method Texas selected to regulate those fields, and the process provided for judicial review, the Supreme Court held that district courts should abstain from hearing cases challenging Commission decisions. *Id.* at 333-34.

"[I]n *Burford* . . . dismissal was appropriate because the availability of an alternative, federal forum threatened to frustrate the purpose of the complex

---

[3]Though some previous opinions in this circuit apply an abuse of discretion standard, *see, e.g.*, *Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 660 (6th Cir. 2002), de novo review is "the rule of the circuit." *Habich*, 331 F.3d at 530 n.2.

administrative system that Texas had established." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 725 (1996). The Supreme Court has therefore summarized *Burford* abstention as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* ("*NOPSI*"), 491 U.S. 350, 361 (1989).

*Burford* abstention often protects "complex state administrative processes from undue federal interference." *Id.* That said, "it does not require abstention wherever there exists such a process." *Id.* "Because *Burford* abstention is concerned with potential disruption of a state administrative scheme, rather than the mere existence of such a scheme, looking behind the action to determine whether it implicates the concerns of *Burford* is necessary." *AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004). "The key question is whether an erroneous federal court decision could impair the state's effort to implement its policy." *Ada-Cascade Watch Co., Inc. v. Cascade Res. Recovery, Inc.*, 720 F.2d 897, 903 (6th Cir. 1983).

## A.

The question in this appeal is one of first impression in this circuit: whether a federal court should abstain from a decision involving the interpretation of a local land use ordinance. We find that it should not. Every case in which we have found *Burford* abstention appropriate has involved evidence that federal involvement would disrupt a coherent state policy. *See Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 424 (6th Cir. 2007) (state utility regulation); *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 480-81 (6th Cir. 2004) (state air pollution regulation); *Caudill v. Eubanks Farms,*

*Inc.*, 301 F.3d 658, 665 (6th Cir. 2002) (state corporate dissolution procedures); *MacDonald v. Village of Northport, Mich.*, 164 F.3d 964, 968 (6th Cir. 1999) (state land plat supervision); *Coal. for Health Concern*, 60 F.3d at 1194-95 (state hazardous waste removal regulation); *Ada-Cascade Watch Co.*, 720 F.2d at 904-05 (state hazardous waste treatment regulation).

This emphasis on state policy is in keeping with the Supreme Court's emphasis on the disruption of state regulatory processes. *Burford* repeatedly articulates the purpose of abstention as facilitating the relationship between the federal government and the states. It notes the importance of preserving "the rightful independence of state governments in carrying out their domestic policy." *Burford*, 319 U.S. at 318. Municipalities have no such independence. Municipalities, unlike states, "are not themselves sovereign." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 39 (1985). "[T]hey do not receive all the federal deference of the States that create them." *City of Lafayette, La., v. La. Power & Light Co.*, 435 U.S. 389, 412 (1978) (plurality opinion). The only authority they possess is derived from the state. *See Cmty. Commc'ns Co., Inc. v. City of Boulder, Colo.*, 455 U.S. 40, 53 (1982). Therefore, we find it appropriate to look to state policy to determine if *Burford* abstention is warranted.

While the presence of a state agency is not conclusive proof that *Burford* abstention is appropriate, the Supreme Court has found that the presence of such a process does indicate that a court should consider *Burford* abstention. *NOPSI*, 491 U.S. at 361; *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959) ("This Court has also upheld an abstention on grounds of comity with the States when the exercise of jurisdiction by the federal court would disrupt a state administrative process."); *see also* ERWIN CHEMERINSKY, FEDERAL JURISDICTION 805 (5th ed. 2007) ("*Burford* abstention requires that the administrative system have a primary purpose of achieving uniformity within a state and that there be the danger that judicial review would disrupt the proceedings and undermine the desired uniformity.").

This emphasis on state administrative involvement is clear in our decisions on *Burford* abstention. In most cases in which we have applied *Burford*, the creation of an agency to promulgate and administer the state policy has served as evidence of the state's level of concern and of its desire for uniform application of the policy. *See Adrian Energy Assocs.*, 481 F.3d at 424; *Ellis*, 390 F.3d at 480-81; *Coal. for Health Concern*, 60 F.3d at 1194-95; *Ada-Cascade Watch Co.*, 720 F.2d at 904-05.

Where there is not an agency devoted to implementing the policy in question, we have looked elsewhere for proof of state involvement. In *Caudill*, we found that the extensiveness of the state statutory scheme governing corporations justified abstention in cases seeking corporate dissolution. 301 F.3d at 665. In *MacDonald*, meanwhile, a state statute provided that a party seeking to challenge a recorded plat must bring suit in state circuit court and that the state treasurer, state director of the department of natural resources, and the relevant township must all be joined. 164 F.3d at 968. The statute provided for mandatory joinder of these parties to ensure that the state agencies and townships would review both the plat and the challenge to it. *See id.* Further, if the suit resulted in a change to a plat providing public access to a lake, the statute provided the state an opportunity to take the property as an ingress or egress point. *Id.* These features demonstrated that *Burford* abstention was appropriate. *Id.* Notably, while the statute at issue provided for the joinder of the local township, our focus was on the state's interests–not those of the township.

## B.

Like *MacDonald*, there is both a state and local policy at interest here. And, like *MacDonald*, we find it appropriate to focus on the state rather than the local policy. The evidence of a coherent state policy here is minimal. The City of Saginaw drafted and implemented the ordinances under the authority of the Township Zoning Act.[4] *See*

---

[4] Michigan has since replaced the Township Zoning Act with the Zoning Enabling Act. *See* MICH. COMP. LAWS §§ 125.3101-125.3702. Like the Township Zoning Act, the Zoning Enabling Act provides municipalities with the authority to create and implement zoning ordinances but does not provide any substantive guidance in developing the ordinances. MICH. COMP. LAWS §125.3401.

MICH. COMP. LAWS §§ 125.271-125.310.  The Township Zoning Act did not provide substantive guidance for municipalities; instead, it provided localities the authority to create zoning ordinances, subject to certain procedural protections not at issue here.  *See* MICH. COMP. LAWS § 125.271.  The Township Zoning Act also did not create any state administrative agency to implement the Township Zoning Act; instead, it left administration of local zoning ordinances to the localities themselves.[5]  *Id.*

The Township Zoning Act also does not display any other hallmarks of a complex and uniform approach to land use issues.  While the Township Zoning Act vests appeals from zoning commissions in the local circuit courts, there is no provision for mandatory joinder of any state official.  *Compare MacDonald*, 164 F.3d at 968.  Similarly, state oversight of zoning is nowhere near as comprehensive as state corporate law governing corporate dissolution.  *Compare Caudill*, 301 F.3d at 665.  Put simply, while land use policy is undoubtedly of substantial public concern, there is no evidence that the state's interest in that policy has led to the type of coherent state policy that would warrant *Burford* abstention.

## C.

Our decision in this case is consistent with the approach taken by the Third Circuit in *Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 747-48 (3d Cir.), *cert. denied*, 456 U.S. 990 (1982).  There, the court found *Burford* abstention inappropriate for a claim based on a local land use ordinance when there was no indication that the claim disrupted the policies in a state statute authorizing the development of local ordinances and instead challenged "the application of those policies by a single township." *Id.* at 748.  Like Michigan's Township Zoning Act, the Pennsylvania statute considered by the court in *Heritage Farms* embodied the state's "policies and general rules concerning municipal land development" but "delegat[ed] power to the

---

[5]This feature also forecloses abstention under the first prong of *Burford* abstention as articulated in *NOPSI*. *See NOPSI*, 491 U.S. at 361.  As there is no question of state law at issue, there are no "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Id.*

municipalities" to enact and enforce local land use ordinances. *Id.* at 747. Noting that "policies necessarily differ from municipality to municipality," the court concluded that "there is no uniform state policy for land use and development." *Id.*

We recognize that we previously have cited favorably the Fourth Circuit's decision in *Pomponio v. Fauquier County Bd. of Supervisors*, 21 F.3d 1319, 1327 (4th Cir. 1994) (en banc), which held that "absent unusual circumstances, a district court should abstain under the *Burford* doctrine from exercising its jurisdiction in cases arising solely out of state or local zoning or land use law, despite attempts to disguise the issues as federal claims." *See MacDonald*, 164 F.3d at 969. However, our decision in *MacDonald* cited *Pomponio* only in dicta. Furthermore, *MacDonald* did not involve a local ordinance, and it cited *Pomponio* favorably for the importance of state land use policy, not for *Pomponio*'s application of *Burford* abstention to local ordinances. *Id.* We now find the Fourth Circuit's approach unpersuasive as it applies to local zoning ordinances.

To summarize, we hold that *Burford* abstention applies only to statewide policies and that the appropriate focus for *Burford* abstention is state policy, rather than local policy. Additionally, we hold that the zoning dispute in this case does not implicate the kind of coherent state policy that would warrant *Burford* abstention.

Again, the Commission has not identified any evidence of a coherent state policy or of how federal involvement would disrupt such a policy. Instead, the Commission's nuisance per se action only challenges the permit Bannum received from the City. The dispute thus turns solely on the City's interpretation of its own zoning ordinance–it does not implicate any policies embodied in the Township Zoning Act or the Zoning Enabling Act. *See Heritage Farms, Inc.*, 671 F.2d at 747-48 (holding that *Burford* abstention was inappropriate where suit implicated only a municipality's zoning policies rather than any policy embodied in the state zoning authorization statute). Therefore, we conclude that the district court erred in abstaining in this case.

**IV.**

As the district court's remand of the School District's claim for lack of subject matter jurisdiction is unreviewable by this court, we dismiss Bannum's appeal in case numbers 08-2069 and 08-2082. As *Burford* abstention was inappropriate for the Commission's claim, we **REVERSE** and **REMAND** for further proceedings in case numbers 08-2068 and 08-2079.