ORDER
Defendant-Intervenors, the Michigan Republican Party and Michigan Attorney General Bill Schuette (“Defendants”), appeal the temporary restraining order issued by the district court on December 5, 2016, requiring Michigan election officials to commence recounting the presidential votes cast in the recent presidential election two days earlier than would have been provided for under Michigan law. For the following reasons, we AFFIRM the district court’s temporary restraining order.[1]
BACKGROUND
On November 8, 2016, the nation conducted a general election to determine, among other offices, the forty-fifth President of the United States. Republican Party presidential candidate Donald J. Trump (“Trump”) was declared the winner in the State of Michigan by 10,704 votes.
On November 30, 2016, Green Party presidential candidate Jill Stein (“Stein”) petitioned the State of Michigan for a recount of its presidential ballots. Trump subsequently objected to the recount, arguing among other things that the recount was invalid under Michigan law. On December 2, 2016, the Michigan State Board of Canvassers deadlocked as to Trump’s objections. Pursuant to Michigan law, Trump’s objections therefore were automatically rejected. See Mich. Comp. Laws § 168.22d(2). Michigan law provides that after the State Board of Canvassers resolves objections to a recount, the recount cannot begin until two business days have passed (“waiting period law”). See id. § 168.882(3). Because December 2, 2016 was a Friday, the recount therefore could not begin until Wednesday, December 7, 2016, two business days and four days *568 total after the Board of Canvassers’ decision.
Federal law requires that all disputes over a state’s delegation to the Electoral College be resolved by December 13, 2016. See 3 U.S.C. § 5. On December 2, 2016, Stein and Michigan voter Louis Novak filed the instant federal lawsuit against Michigan election officials in the Eastern District of Michigan asserting that Michigan’s waiting period law would make it impossible for the recount to be completed by the federal deadline. Plaintiffs asserted various First and Fourteenth Amendment claims under 42 U.S.C. § 1983 all seeking the same relief—an order requiring the recount to begin immediately without observing the waiting period law. Stein also filed an application for a temporary restraining order seeking the same relief. On December 5, 2016, the district court granted the restraining order and required the recount to begin at noon the same day. Defendants filed a notice of appeal in this Court challenging the restraining order, and have moved us for a stay of the district court’s order.
While these federal proceedings were going on, Trump filed applications before the Michigan Court of Appeals and the Michigan Supreme Court attacking the recount on substantive grounds under Michigan law. The parties filed briefing before the Michigan Court of Appeals on December 5, 2016, and that court will hear arguments on the matter on December 6, 2016.
DISCUSSION
I. Article III Standing
At the outset, we are obliged to determine whether Article III standing exists to adjudicate this matter. We note that this is a separate question from whether a Stein had the right to initiate the recount in the first place, an issue of Michigan state law that is not before us, and will in any event be determined by the Michigan courts. In order to establish Article III standing, a party must demonstrate: (i) that she has suffered an injury in fact that is (ii) fairly traceable to the conduct being challenged, and (iii) the injury will likely be redressed by a favorable decision from the federal court. See, e.g., Wittman v. Personhuballah, — U.S. -, 136 S.Ct. 1732, 1736, 196 L.Ed.2d 37 (2016).
We hold that Stein and Novak have demonstrated Article III standing to bring this lawsuit. Michigan law provides for election recounts under certain circumstances, See Mich. Comp. Laws §§ 168.880 et seq. Stein and Novak have invoked the recount right created by Michigan law, and although the Michigan state courts may eventually decide otherwise, to date, no court has held that Stein and Novak’s recount petition was invalid. Accordingly, Plaintiffs’ allegations that the waiting period law will make it functionally impossible to exercise their state law recount right alleges an injury in fact sufficient to satisfy Article III. This injury is fairly traceable to the waiting period law, which as the district court noted, would have eliminated roughly one-third of the time available for the recount.
Moreover; Plaintiffs’ injury was redress-able by a favorable order from the district court. Indeed, by obtaining the temporary restraining order Plaintiffs sought, the-recount was initiated in sufficient time to be completed by the December 13, 2016 federal deadline. Accordingly, Plaintiffs are properly before our Court.
II. Appealability of the Temporary Restraining Order
Plaintiffs assert that we lack jurisdiction over this appeal because a temporary restraining order is not a reviewable interlocutory order. We disagree.
*569 Generally, temporary restraining orders are not immediately appealable. See Office of Pers. Mgmt. v. Am. Fed’n of Gov’t Employees, AFL-CIO, 473 U.S. 1301, 1303-05, 105 S.Ct. 3467, 87 L.Ed.2d 603 (1985). We have acknowledged exceptions to this rule that permit appeal whenever irreparable harm will occur before the order expires, or the order requires “affirmative action” rather than simply preserving the status quo. Ne. Ohio Coalition for Homeless & Serv. Emps. Int’l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1005-06 (6th Cir. 2006).
Here, the district court’s temporary restraining order required affirmative action—it ordered Michigan officials to begin the recount two days before the time provided under Michigan law. We therefore hold that the district court’s order was an appealable interlocutory order.
III. Propriety of the Temporary Restraining Order
We review a district court’s decision to grant a temporary restraining order for abuse of discretion. Id. at 1009. “To determine whether a TRO should be stayed,” we consider the same factors used to determine whether the TRO should be issued in the first place, including: “(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay.” Id. “These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together.” Mich. Coal of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir. 1991). “For example, the probability of success that must be demonstrated is inversely proportional to the amount of ir-reparablé injury the movants will suffer absent the stay.” Blackwell, 467 F.3d at 1009.
We hold that the district court did not abuse its discretion in granting the temporary restraining order at issue here. Plaintiffs have made a compelling showing that they will be irreparably harmed in the absence of the temporary restraining order. Defendant Thomas admitted before the district court that it would have been extremely difficult and unlikely—a “monumental undertaking”—for the State to have completed the recount before the December 13, 2016 federal deadline if it had observed the waiting period law. If the recount could not be completed by the federal deadline, the right to a recount provided under Michigan law would have been effectively worthless. Facing the potential that Plaintiffs’ state recount right may have been deprived entirely by the waiting period law, we cannot say that the district court abused its discretion in determining that Plaintiffs would suffer irreparable harm without a TRO.
Because Plaintiffs made an extremely strong showing of irreparable harm, they were not required to make as a strong a showing of a likelihood of success on the merits. Blackwell, 467 F.3d at 1009. Plaintiffs met this lowered bar. As the district court recognized, once a state legislature vests its citizens with election rights, those rights are fundamental and are protectable by the First and Fourteenth Amendments. See, e.g., Bush v. Gore, 531 U.S. 98, 104, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000) (non-precedential); League of Women Voters of Ohio v. Brunner, 548 F.3d 463, 476 (6th Cir. 2008). Plaintiffs made a sufficient showing that the State of Michigan granted them a right to a recount; once that premise is established, we think it clear that the State could not use arbitrary or *570 unreasonable procedural rules to make that right a nullity.
When evaluating whether state election procedures violate First and Fourteenth Amendment election rights, we use the framework set out by the Supreme Court in Anderson v. Celebrezze, 460 U.S. 780, 788-89, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), and Burdick v. Takushi, 504 U.S. 428, 434, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). Under the Anderson/Burdick framework, we weigh the burden to a plaintiffs First and Fourteenth Amendment rights against the interests put forward by the State as justifications for its election procedures. Burdick, 504 U.S. at 434, 112 S.Ct. 2059. Our inquiry is rigorous when the burden on a plaintiffs rights is severe, and more relaxed when the burden is slight or minimal. Id.
Here, as explained earlier, Plaintiffs would have essentially lost their state-recognized recount right entirely if the waiting period law had been followed. This is a severe burden, and requires us to closely scrutinize the justifications put forward for the waiting period. As the district court correctly recognized, the justification put forward by Defendants—that the waiting period allows for judicial review before the state spends resources on a recount—is simply not compelling enough to justify de facto nullifying Plaintiffs’ right to invoke the recount procedures afforded them under Michigan law. The district court did. not abuse its discretion in determining that Plaintiffs made a sufficient showing of success on the merits in light of the irreparable harm Plaintiffs would have suffered without relief.
The two other TRO factors also justify the district court’s decision. First, the TRO did not cause substantial harm to the State of Michigan or its citizens; it merely required the recount to start a day-and-a-half earlier than it otherwise would have. Likewise, given that Michigan has chosen to provide for potential recounts, we believe the public interest was served by relaxing a procedural requirement that would have effectively nullified that right.
Finally, we wish to emphasize the narrowness of the question we decide today. We do not decide that there is a freestanding constitutional right to a recount, or that Plaintiffs validly invoked a recount under Michigan law, or that Plaintiffs should necessarily prevail on the merits of this suit. We merely hold that given the strong showing of irreparable harm here, Plaintiffs’ colorable arguments that their state-created recount right was being arbitrarily abridged, and the relatively minimal stakes involved in starting the recount slightly earlier than it otherwise would have, the district court did not abuse its discretion in granting a temporary restraining order.
IV. Defendants’ Arguments
' Defendants offer several arguments in support of their position, but we pause to address two briefly. First, Defendants argue that Plaintiffs could have initiated a recount or raised concerns about the vulnerability of Michigan’s election machinery earlier than they did, and that therefore Plaintiffs’ suit should be barred by the doctrine of laches. This argument lacks merit. Plaintiffs indisputably filed their recount petition within two days after the final certification of Michigan’s presidential vote. See Mich. Comp. Laws § 168.880. We doubt that laches can ever be invoked when Plaintiffs have complied with statutory time limits. But in any event, Defendants have made no showing of the sort of bad faith or inexcusable delay necessary to invoke the doctrine here. Moreover, Plaintiffs do not ask this Court to find that Michigan’s election results were tainted by fraud; they merely argue that the waiting *571 period law was unconstitutional as applied to them. Given the narrowness of the issues properly before the Court, we decline to weigh in on any issues concerning the propriety of the recount or Michigan’s presidential canvas, which are best left to the Michigan courts at this stage.
Second, Defendants urge us to abstain from deciding the questions presented in this appeal under the doctrines announced in Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Pullman abstention is appropriate where a litigant asks a federal court to reach a constitutional question predicated on the federal court’s own, non-binding interpretation of state law. Moore v. Sims, 442 U.S. 415, 425, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). Burford abstention is appropriate “where timely and adequate state-court review is available and (1) a case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case at bar, or (2) the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.” Caudill v. Eubanks Farms, Inc., 301 F.3d 658, 660 (6th Cir. 2002).
Neither doctrine is appropriate here. We have not decided a single state law issue or interpreted a single Michigan statute in deciding this appeal. We merely took the waiting period law at face value, and evaluated whether the district court abused its discretion in temporarily restraining its operation. This inquiry involved only established federal standards governing TROs, and federal constitutional principles stemming from the First and Fourteenth Amendments. Because we did not decide any state law questions, Pullman and Burford are inapposite.
CONCLUSION
For the foregoing reasons, we hold that the district court did not abuse its discretion by issuing a temporary restraining order halting operation of the waiting period law. We therefore AFFIRM the district court’s temporary restraining order. If, subsequently, the Michigan courts determine that Plaintiffs’ recount is improper under Michigan state law for any reason, we expect the district court to entertain any properly filed motions to dissolve or modify its order in this case.

. We GRANT Attorney General Schuette’s motion to intervene in this appeal, but DENY his and the Michigan Republican Parly’s separate motions to stay the district court’s order AS MOOT.